**CASUAL CORNER ASSOCIATES, INC.,**
Plaintiff-Appellee,

v.

**CASUAL STORES OF NEVADA, INC., et al., Defendants-Appellants.**

No. 71–2805.

United States Court of Appeals, Ninth Circuit.

March 5, 1974.

Lawrence W. Jordan, Jr. (argued), Stafford W. Keegin, Cotton, Seligman & Ray, San Francisco, Cal., for defendants-appellants.

Julian Caplan (argued), J. Thomas McCarthy, Gregg, Hendricson & Caplan, San Francisco, Cal., Elihu H. Berman, Ritter & Berman, Hartford, Conn., for plaintiff-appellee.

Before CHAMBERS, CHOY and WALLACE, Circuit Judges.

WALLACE, Circuit Judge:

Casual Stores of Nevada, Inc. and other related corporations primarily con-

trolled by either Vegod Corporation or Maurice Hack (Hack Group) [1] appeal from a judgment in favor of Casual Corner Associates, Inc. (Casual Associates) enjoining future use of the trademark "CASUAL CORNER." Casual Associates was required to pay $1,600 to compensate the Hack Group for expenses it would incur in complying with the injunction. We affirm.

Curtis and Anderson, Hack's predecessors in interest, began using the mark CASUAL CORNER in 1947, in connection with a retail clothing store in Sacramento, California. By 1953, Curtis and Anderson had four small, local Casual Corner stores in Sacramento, two of which were closed the next year. Hack acquired the remaining two stores in 1955 and 1956, and subsequently closed one in 1959. According to the document providing for the sale of the store in 1956, Curtis and Anderson sold to Hack:

> All right of sellers in and to the use of the name "Casual Corner" in connection with the operation of a women's apparel business in the premises or elsewhere in Fruitridge Shopping Center, Sacramento, California.

Curtis and Anderson further agreed not to compete with Hack within one mile of the shopping center, but retained, although never exercised, the right to use the mark in any other area.

Although by 1961 Hack had established two more small, local stores in Napa and San Leandro, he did not use the mark at those stores prior to August, 1957. By 1966, he had closed all of his stores and for a period of about one year from 1966 to 1967, neither he nor any member of the Hack Group operated any Casual Corner stores or used the mark CASUAL CORNER. In 1967, Hack opened a Casual Corner store in San Francisco, and, in 1968, Casual Associates filed this action against the Hack Group.

Casual Associates' predecessors first began using the CASUAL CORNER mark in 1950 in Washington, D. C. Since that time Casual Associates has acquired the rights of these predecessors through valid assignments of trademarks and goodwill and is the owner of a United States Trademark Registration for the mark which was published by the United States Patent Office in 1957. The registration has now become incontestable and Casual Associates and its licensees or their predecessors have continuously used the mark while expanding their operation to encompass 15 states and the District of Columbia. By 1970, they were operating 58 stores and were planning to expand to other states. Casual Associates and its licensees have extensively advertised the mark both in national publications and by direct mailings to about 600,000 customers; over 1,000 of these mailings, which included mailings to numerous charge-account and mail-order customers, were to people located in California. In 1971, subsequent to the filing of this action, Casual Associates opened its first West Coast store in the San Francisco Bay area.

The right of a registrant to use his mark becomes incontestable under 15 U. S.C. § 1065 after five years of continuous use from the date it is registered, except to the extent that the use infringes upon a valid right acquired under state law by a use continuing from a date prior to the federal registration and publication. Once a mark becomes incontestable, the registrant's right to use it is exclusive subject to the conditions and limitations of section 1065 and the defenses allowed under 15 U.S.C. §

1. Casual Stores of Nevada, Inc., Casual Stores, Inc., Hayward Fashions, Inc., Vegod Corporation, Bayfair Casuals, Inc., and Maurice Hack are the defendants in this case. These parties are connected by the following relationships: Maurice Hack owns 100% of the stock of Casual Stores of Nevada, Inc., a Nevada corporation, and Bayfair Casuals, Inc., a California corporation; the stock of Casual Stores, Inc., a California corporation, is owned by Hack, his Casual Stores of Nevada corporation and others; Vegod Corporation, a California corporation, owns 100% of the stock in Hayward Fashions, Inc., another California corporation.

1115. The Hack Group urges that Casual Associates' mark is not incontestable as to it because Hack's predecessors (Curtis and Anderson) obtained a state common law right to use the mark before Casual Associates' predecessors began using the same mark. Asserting that section 1065 controls section 1115, the Hack Group argues that it is not limited to the section 1115 defenses and can assert common law defenses.

■ Although a similar claim that section 1065 controls section 1115 was rejected in Travelodge Corporation v. Siragusa, 228 F.Supp. 238, 242 (N.D. Ala.1964), aff'd per curiam, 352 F.2d 516 (5th Cir. 1965), we need not reach that issue. Even assuming that section 1065 controls section 1115, the Hack Group must establish that it has a valid right under state law acquired by a use *continuing* from a date prior to the registration and publication of the mark under the federal trademark laws. To establish such a right, it must show (1) that its use of the mark began before its registration and publication in 1957 and (2) that there has been continuing use since that time. Since the trial court found that the predecessors of the Hack Group began using the mark before Casual Associates or its predecessors, the pivotal issue is whether there has been a continuing use. To be a continuing use, the use must be maintained without interruption.

The trial court concluded that there was not a continuing use of the mark by the Hack Group and its predecessors. To prevail on appeal, the Hack Group must demonstrate that the findings of fact were clearly erroneous. Fed.R.Civ. P. 52(a). Norm Thompson Outfitters, Inc. v. General Motors Corp., 448 F.2d 1293 (9th Cir. 1971). Clearly, it has not done so. In making this determination, we have judged, as we must, the evidence in a light most favorable to Casual Associates and have allowed it every reasonable inference. Wineberg v. Park, 321 F.2d 214, 218 (9th Cir. 1963).

The trial court's decision is supported by Hack's complete nonuse of the mark for the one-year period between 1966 and 1967. In response to this evidence, the Hack Group argues that there is a continuing use within the meaning of the statute unless the owner has abandoned the mark. In support of this argument, it contends that absence of use for a period of time by itself without intent to "abandon" does not dictate the loss of rights to a mark as a matter of law, citing Beech-Nut Packing Co. v. Lorillard, Co., 273 U.S. 629, 47 S.Ct. 481, 71 L.Ed. 810 (1927) (lack of use for five years). It vigorously argues that since it did not abandon the mark, it is entitled by its prior use to common-law rights superior to Casual Associates' registration. The *Beech-Nut* case, however, was decided almost twenty years prior to the enactment of 15 U.S.C. § 1065, the statute which governs our decision, and that statute excepts only uses continuing from a date prior to publication of the registered mark.

■ Furthermore, to argue that there is a continuing use unless the user has abandoned the mark creates a false issue. Section 1065 places upon a person claiming a prior state right the burden of showing that his has been a continuing use. To equate *continuing* with *a failure to abandon* would shift the burden from the state-right claimant to the owner of a valid and incontestable trademark. Such a result would be inconsistent with the statute and with the protection afforded by the trademark laws. The Hack Group's failure to use the mark for the one-year period prevents it from claiming that it falls within the exception of section 1065 requiring a continuing use.

Although sufficient to sustain the judgment, the nonuse was not the only evidence before the trial court from which it could determine that there was not a continuing use by the Hack Group. In 1965 and 1966, Hack closed his Sacramento and San Leandro stores pursuant to an agreement of noncompetition between himself and a subsidiary of the Vegod Corporation, after which they worked together in a joint enterprise.

On the basis of this agreement, the trial judge found that Hack had no intent to reopen either store as long as Vegod operated in the area. Only the use of the mark at this Sacramento store predated the issuance of the federal trademark registration to Casual Associates. The court further found that there was no goodwill from the prior stores that could bridge the one-year gap; aggressive collection tactics subsequent to the factoring of the accounts receivable had turned the only remaining goodwill into ill will. The trial court also found that the only store opened subsequent to the one-year period and prior to the commencement of this action was in San Francisco which was a new and different trade area.

Another indispensable requirement for the Hack Group to prevail is an adequate demonstration of entitlement to the use by Hack's predecessors. If the claimed continuing use is to be projected back to a date prior to the registration and publication of the mark owned by Casual Associates, it must prove its entitlement to the use by Curtis and Anderson. To do so, the Hack Group argues that it acquired complete ownership of the mark as part of the 1955 store purchase, but the trial judge found that Hack's rights in the mark were limited to the two Sacramento shopping centers in which the stores were purchased. This was not clearly erroneous. The only evidence contrary to this finding is the oral testimony of Hack and Curtis to the effect that Anderson and Curtis intended to transfer all their rights to the use of the mark to Hack in 1955. This story was more than a little difficult to credit especially given the limited 1956 purchase agreement and the absence of a written agreement in 1955. Even though uncontradicted by other oral testimony, the trial judge was entitled to disbelieve it. *See* Broadcast Music, Inc. v. Havana Madrid Restaurant Corp., 175 F.2d 77, 80 (2d Cir. 1949); American Photographic Pub. Co. v. Ziff-Davis Pub. Co., 135 F.2d 569, 573 (7th Cir. 1943). Given this, there is substantial evidence to support the trial judge's finding. Following the 1955 sale, Curtis and Anderson continued to operate the nearby Fruitridge store, an action inconsistent with a claim that all rights to the mark were earlier transferred. More importantly, the 1956 purchase agreement limited the trademark rights granted to those of the store purchased, and Anderson and Curtis retained the right to compete with Hack outside of one mile from the shopping center.

Therefore, regardless of whether section 1065 controls section 1115, the Hack Group is precluded from claiming any rights arising out of the exception to section 1065 because of its failure to demonstrate a use of the mark continuing from a date prior to the federal trademark registration and publication. Thus, it may raise only those defenses specifically enumerated in section 1115. The Hack Group claims a defense of nonabandonment. While abandonment is a defense under section 1115, the defense is abandonment by the registrant, not the nonabandonment by the nonregistrant. Abandonment under section 1115 would be relevant only if Casual Associates had abandoned the trademark.[2]

2. The Hack Group quotes Callmann for the proposition that:

The trademark owner need not, however, prove a settled and permanent place of business, and any intervening period of nonuse, unless, of course, it constitutes an abandonment, will not destroy the right of the first user. (footnotes omitted)

3 R. Callmann, The Law of Unfair Competition, Trademarks and Monopolies, § 76.2(d) at 289–90 (3d ed. 1969). Callmann's statement is misleading and subject to different interpretations. One interpretation is that a nonregistrant who first used the mark will not lose his rights by nonuse, unless that nonuse is an abandonment. This interpretation would be more favorable to the Hack Group because it is more difficult to prove abandonment than it is to prove lack of use. However, if this interpretation were intended by Callmann, the cases he cites do not support the proposition asserted. On the

714

Finally, the Hack Group raises a limited area defense under section 1115(b)(5), claiming that at least within certain areas, it should be able to use the mark. However, this defense hinges upon the requirement of the Hack Group being a valid prior and continuous user.[3] Based upon the trial court's findings, the Hack Group is not a prior continuous user. Therefore, that issue must also be decided against the Hack Group.

Affirmed.

other hand, Callmann is correct if he means that the *registrant* will lose his right through nonuse only if that nonuse constitutes an abandonment. This, of course, is of no value to the Hack Group because it has neither proven nor attempted to prove that Casual Associates has abandoned the mark.

3. The limited area defense applies if the alleged infringer can establish:

That the mark . . . was adopted without knowledge of the registrant's prior use and has been continuously used by such party . . . from a date prior to registration of the mark . . . . *Provided, however*, That this defense or defect shall apply only for the area in which such continuous prior use is proved . . . .

