**Muriel B. SEYMOUR and David Seymour, Plaintiffs-Appellees-Cross-Appellants,**

v.

**SUMMA VISTA CINEMA, INC., et al., Defendants-Appellants-Cross-Appellees.**

Nos. 85–6278, 85–6307.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 4, 1986.

Decided Feb. 6, 1987.

Richard A. Love, Santa Monica, Cal., for plaintiffs-appellees-cross-appellants.

Robert A. Holtzman, Los Angeles, Cal., for defendants-appellants-cross-appellees.

Before WALLACE, BOOCHEVER and KOZINSKI, Circuit Judges.

KOZINSKI, Circuit Judge:

### Facts

Appellees, Muriel B. Seymour and her son David Seymour, sued a variety of defendants for securities fraud in connection with the purchase of stock in Summa Vista Cinema, Inc. (Summa Vista). Claiming violations of federal securities law and common law fraud, they sought compensatory and punitive damages. The Seymours took a default judgment against J.R. Shestak III, the broker who actually induced the purchase, and entered into a settlement agreement with Summa Vista and related defendants. They then proceeded to trial against Shestak's employer, appellant J. Alexander Securities, Inc. (Alexander).

Evidence at trial showed that Shestak made several false representations and material omissions in inducing the Seymours to purchase the Summa Vista stock. There was also proof that Alexander failed to properly train and supervise Shestak, failed to adequately control his activities, and ignored problems with Shestak's behavior when the Seymours complained.

The jury initially returned a verdict in favor of Muriel Seymour for $570,000 compensatory and $180,000 punitive damages.[1]

---

1. The jury also awarded plaintiff David Seymour compensatory damages of $12,500 and

The district court found that the compensatory damage figure far exceeded the amount supported by the evidence. Believing that the jury may have transposed the compensatory and punitive figures, the court reinstructed the jury and sent them back for further deliberations. This failed to correct the problem; the jury returned a second verdict awarding Mrs. Seymour $570,000 compensatory and $500,000 punitive damages.

Alexander moved for judgment notwithstanding the verdict or for a new trial. The district court denied the j.n.o.v. motion but granted the motion for new trial on the issue of damages only, conditioned on Muriel Seymour's agreement to remit all compensatory damages in excess of $180,000. The judge also disregarded the second verdict as "surplusage." Mrs. Seymour agreed to the remittitur and the court entered final judgment in her favor for $180,-000 compensatory and $180,000 punitive damages. Both parties appeal.

### Discussion

New Trial

Alexander complains that the jury verdict of $570,000 compensatory damages, which the district court recognized far exceeded the amount proved at trial, was the product of passion and prejudice, requiring a new trial on all issues. Alexander admits that the court's attempt to cure the defect by reinstructing the jury was proper. However, once the second verdict failed to correct the problem, Alexander contends, a new trial should have been granted. We review a district court's decision on a motion for new trial for abuse of discretion. *McKinley v. City of Eloy,* 705 F.2d 1110, 1117 (9th Cir.1983).

■ The district court found that the amount of the damage award may have resulted from passion and prejudice, but

did not find, nor did Alexander establish, that the jury's finding of liability was tainted by prejudice. The fact that a jury may have been outraged by the defendant's conduct to the point of awarding excessive damages does not prove that its decision on liability was flawed. This case is different from *Minnesota, St. Paul & Sault Ste. Marie Ry. v. Moquin,* 283 U.S. 520, 51 S.Ct. 501, 75 L.Ed. 1243 (1931), where the Court ordered a new trial because counsel's misconduct in appealing to the passion and prejudice of the jury tainted the liability finding. There was no impermissible conduct in this case; Alexander relied entirely on the excessive jury award to prove passion and prejudice.

■ Where there is no evidence that passion and prejudice affected the liability finding, remittitur is an appropriate method of reducing an excessive verdict:

When the court, after viewing the evidence concerning damages in a light most favorable to the prevailing party, determines that the damages award is excessive, it has two alternatives. It may grant defendant's motion for a new trial or deny the motion conditional upon the prevailing party accepting an remittitur. The prevailing party is given the option of either submitting to a new trial or of accepting a reduced amount of damage which the court considers justified.

*Fenner v. Dependable Trucking Co.,* 716 F.2d 598, 603 (9th Cir.1983) (citing *Linn v. United Plant Guard Workers,* 383 U.S. 53, 65–66, 86 S.Ct. 657, 664, 15 L.Ed.2d 582 (1966)); *see also* 6A J. Moore, *Moore's Federal Practice* ¶ 59.08[4] at 59:126–27 ("it may be appropriate, where the verdict is excessive, to order a new trial unless the claimant remits a certain sum").[2]

■ Mrs. Seymour argues that the amount of compensatory damages awarded

---

punitive damages of $12,500. Those amounts are not at issue in this appeal.

2. Alexander also claims a new trial was required because the two verdicts were inconsistent with each other. But a problem arises only

where a verdict is internally inconsistent, or where verdicts on two different issues in a case are inconsistent with each other. *See, e.g., Wood v. Holiday Inns, Inc.,* 508 F.2d 167, 175 (5th Cir.1975).

by the jury was supported by the evidence and the district court therefore erred in requiring her to remit a portion. But Mrs. Seymour may not appeal from the remittitur order she accepted below. *Donovan v. Penn Shipping Co.*, 429 U.S. 648, 650, 97 S.Ct. 835, 837, 51 L.Ed.2d 112 (1977) (per curiam); *999 v. C.I.T. Corp.*, 776 F.2d 866, 873 (9th Cir.1985).

### Sufficiency of the Evidence and Jury Instructions

█ Alexander contends that there was no evidence it knew the Seymours purchased Summa Vista stock so it could not properly be held liable for Shestak's fraud, nor for punitive damages under Cal.Civ. Code § 3294. We believe the evidence supported a finding Alexander had at least constructive knowledge of the Summa Vista deal. Even absent direct proof of knowledge, Alexander could be found liable under federal law for failure to provide a reasonable system of supervision and control, *Zweig v. Hearst Corp.*, 521 F.2d 1129, 1134–35 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469, 46 L.Ed.2d 399 (1975), and under state law for its agent's actions taken within the scope of his authority, *Alhino v. Starr*, 112 Cal.App.3d 158, 174, 169 Cal.Rptr. 136, 146 (1980).

█ Likewise, punitive damages were properly submitted. They could have been based on Alexander's own malice, evidenced by its failure to adequately control Shestak or to make an adequate investigation of his previous activities before hiring him, in reckless or conscious disregard for the rights of others. *See Krusi v. Bear, Stearns & Co.*, 144 Cal.App.3d 664, 678–80, 192 Cal.Rptr. 793, 802–03 (1983). Prior to working for Alexander, Shestak was a defendant in two lawsuits alleging fraud and theft of customer lists. In view of the nature of Alexander's business involving reliance by customers, the jury could have found that Alexander's failure to investigate those incidents, coupled with its failure to adequately train or supervise Shestak, amounted to reckless or conscious disregard for the rights of others. In the alternative, the jury could have found that Alexander ratified Shestak's fraudulent activity, through knowledge and failure to act. *See Hobbs v. Bateman Eichler, Hill Richards, Inc.*, 164 Cal.App.3d 174, 193–94, 210 Cal.Rptr. 387, 398 (1985); *Greenfield v. Spectrum Investment Corp.*, 174 Cal. App.3d 111, 118, 219 Cal.Rptr. 805, 809 (1985). Indeed, there was evidence that Alexander tried to sweep certain of Shestak's misdeeds under the carpet instead of attempting to remedy them.

█ Alexander also claims the district court erred in giving an instruction on its fiduciary duty to the Seymours and in failing to give other instructions. These arguments are without merit. The fiduciary duty instruction properly described the relationship between the firm and the Seymours. *See Hobbs*, 164 Cal.App.3d at 201, 210 Cal.Rptr. at 403–04; *Main v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 67 Cal.App.3d 19, 32, 136 Cal.Rptr. 378, 386 (1977). The failure to give the other instructions requested by Alexander was not error; the instructions as a whole fairly stated the applicable law. In addition, the record reflects that Alexander failed to properly object in most instances.

█ Finally, based on a pretrial stipulation, the district court refused to allow Alexander to present evidence that Shestak was really employed by another broker at the relevant time. Relief from a pretrial order is committed to the district court's discretion. *Angle v. Sky Chef, Inc.*, 535 F.2d 492, 495 (9th Cir.1976). Alexander might have been entitled to relief had it demonstrated manifest injustice, as well as lack of prejudice to the Seymours and minimal inconvenience to the court. *Id.*; Fed. R.Civ.P. 16. Alexander could not show manifest injustice because its liability was unaffected by the excluded evidence: it continued to control Shestak with respect to the Seymours even though another entity technically might have been his employer. In addition, relief from the order would have prejudiced the Seymours, who had prepared for trial based on the stipulated employment relationship.

Settlement Offset

██ Prior to trial, the Seymours accepted a settlement from the Summa Vista defendants, consisting of a promissory note for $4000, together with "an unequivocal commitment to buy back Mrs. Seymour's stock if she cannot sell it otherwise, for $100,000." RT 784.[3] The district court set off from the verdict the actual value of this settlement, which it determined to be $14,222, "taking into account primarily the risk of non-payment because of inability to pay." Order on Post-Trial Motions at 3.

The parties now contend that the district court should not have conducted any actual value analysis at all. Alexander claims that, to avoid the danger of double recovery, the full face amount of the settlement should have been deducted. The Seymours, for their part, argue that only the amount they actually received, $500, should have been deducted, at least until such time as they collect more.

██ We start with the fundamental principle that a payment made by a joint tortfeasor diminishes the claim against the remaining tortfeasors. Restatement (Second) Torts § 885(3) (1977); *Husky Refining Co. v. Barnes*, 119 F.2d 715, 716 (9th Cir. 1941); *see also Screen Gems-Columbia Music, Inc. v. Metlis & Lebow Corp.*, 453 F.2d 552, 554 (2d Cir.1972); *Billiot v. Sewart Seacraft, Inc.*, 382 F.2d 662, 664–66 (5th Cir.1967). If the payment made is in a form other than cash, the district court should value the property and deduct that amount. *See Ratner v. Sioux Natural Gas Corp.*, 719 F.2d 801, 803 (5th Cir.1983); *Bal Theatre Corp. v. Paramount Film Dist. Corp.*, 206 F.Supp. 708, 714 (N.D.Cal. 1962). Moreover, future payments may be credited by discounting the expected income stream to present value. *Franck v. Polaris E–Z Go Div. of Textron, Inc.*, 157

Cal.App.3d 1107, 1116–17, 204 Cal.Rptr. 321, 326 (1984).[4]

This case presents a novel variation on these principles. Although the Seymours undeniably received something of value from the Summa Vista defendants, it was in the form of a contingent promise of future payment. The district court discounted the face value of the settlement based not on present value analysis, but on the likelihood that the settling defendants would be unable to meet their obligation fully. What the Seymours received was certainly worth more than the $500 they were given at the time, but very likely less than the $104,000 face value of the agreement. The district court therefore made a determination of the fair market value of the promise of future payment: what a buyer would pay for the settlement given the poor financial condition of the obligor.

While the district court's approach is without precise precedent, it comports with the policies of the law in this area. The foremost of these is assuring the tort victim one complete satisfaction of his claim, neither more nor less. *Miller v. Apartments & Homes of New Jersey, Inc.*, 646 F.2d 101, 109 (3d Cir.1981). By deducting the fair market value of the settlement agreement, the district court provided plaintiffs one satisfaction of their claim. Although future events may diverge from the district court's prediction, the determination must be made as of the time of the judgment. Our system of justice cannot provide certainty; a fair and reasonable approximation in light of the facts available when the court makes its decision suffices. The district court's approach also serves another policy, that of encouraging settlement even with those whose present financial condition may be less than optimal. Adopting Alexander's proposed approach might well deter plaintiffs from settling

3. The parties describe the settlement in their briefs as a note for $104,222, but the transcript of the oral argument below describes it as a combination note and contingent purchase agreement.

4. It is unclear whether federal or state law applies to the settlement offset issue. *Compare Wassel v. Eglowsky*, 399 F.Supp. 1330, 1367

(D.Md.1975), *aff'd* 542 F.2d 1235 (4th Cir.1976), *with Johnson v. Rogers*, 621 F.2d 300, 304 n. 6 (8th Cir.1980); *see generally* C. Wright, *Law of Federal Courts* § 59 (4th ed. 1983). In any case, state law appears to be consistent with federal law on this issue and we consider California precedent persuasive authority.

with impecunious defendants for fear that a paper judgment will bar recovery against a solvent defendant.

District courts may not, of course, engage in speculation in evaluating settlements. *See City of San Francisco v. United Ass'n of Journeymen, Local 38,* 185 Cal.App.3d 229, 238, 217 Cal.Rptr. 167, 172 (1985) (setoff too speculative where impossible to tell if any money would ever be paid), *reversed on other grounds,* 42 Cal.3d 810, 230 Cal.Rptr. 856, 726 P.2d 538 (1986); *Franck,* 157 Cal.App.3d at 1119, 204 Cal.Rptr. at 327 (consideration of future tax consequences of future payments too speculative). In this case, however, the parties do not dispute the value the district court assigned to the settlement agreement, only the method employed. Since we have determined that the approach taken by the district court was proper, we have no basis for reversing the court's application of it in this case.

AFFIRMED.