28 F.3d 104
 RICO Bus.Disp.Guide 8628
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re AMERICAN CONTINENTAL CORPORATION/LINCOLN SAVINGS &
LOAN SECURITIES LITIGATION, Debtor.
Sarah B. SHIELDS, et al., Plaintiffs-Appellees,
v.
Charles H. KEATING, Jr., et al., Defendants,
and
Conley D. Wolfswinkel, Defendant-Appellant.
 No. 93-15131.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 8, 1994.
Decided May 23, 1994.
 
 1
 Before: ALARCON and FERNANDEZ, Circuit Judges, and WILSON, District Judge*.
 
 
 2
 MEMORANDUM**
 
 
 3
 Conley D. Wolfswinkel appeals from a judgment entered against him based upon securities fraud, RICO, and various state law causes of action. All of the claims against him arose out of his participation in real estate transactions with American Continental Corporation (ACC), Lincoln Savings & Loan (Lincoln), and Charles Keating. We affirm.
 
 BACKGROUND
 
 4
 A class action was filed by Sarah B. Shields[1] for herself and other purchasers of ACC securities, against ACC, Lincoln, certain officers and directors of ACC and Lincoln, and various professionals who had provided services to ACC and Lincoln. Shields generally alleged violations of the federal securities laws, the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. Secs. 1961-1968, and state laws, arising from a scheme to artificially inflate the value of ACC securities. The action was transferred to the District of Arizona by the Judicial Panel on Multidistrict Litigation and consolidated with other actions arising from the same fraudulent scheme (the MDL litigation).
 
 
 5
 Wolfswinkel was added as a defendant in the MDL litigation on May 11, 1990. Shields alleged that Wolfswinkel played the part of a straw man and furthered the scheme by entering into sham real estate transactions which generated artificial profits for ACC and Lincoln.
 
 
 6
 Wolfswinkel filed a petition for reorganization under chapter 11 of the Bankruptcy Code on February 20, 1991, which stayed the MDL litigation as to him. On June 3, 1991, Shields filed a proof of claim in the chapter 11 case and Shields also filed a complaint to determine the dischargeability of the claim pursuant to 11 U.S.C. Sec. 523(a)(2) (the dischargeability action). The stay of the MDL litigation against Wolfswinkel was not lifted, but the district court withdrew the dischargeability action from the bankruptcy court and consolidated it with the MDL litigation. A jury trial in the consolidated litigation resulted in a verdict against Wolfswinkel for 518 million dollars compensatory damages, and 410 million dollars punitive damages.
 
 
 7
 The district court denied Wolfswinkel's motion for judgment notwithstanding the verdict and for new trial. The court reduced the compensatory damages to $288,777,512, trebled them pursuant to 18 U.S.C. Sec. 1964(c), and struck the punitive damages. A judgment for $1,003,638,825.38 was entered and certified for appeal pursuant to Fed.R.Civ.P. 54(b). It is from that judgment that Wolfswinkel appeals.[2]
 
 DISCUSSION
 
 8
 A. Withdrawal of the Reference to the Bankruptcy Court
 
 
 9
 Wolfswinkel first claims that the district court should not have withdrawn the dischargeability action from the bankruptcy court.[3] We disagree.
 
 
 10
 The district court has original jurisdiction of bankruptcy matters and may withdraw a proceeding from the bankruptcy judge in whole or in part, at the request of a party or sua sponte. 28 U.S.C. Secs. 157(a), (d), 1334. Discretionary withdrawal may be had upon a showing of cause. Id. Sec. 157(d).
 
 
 11
 The district court may exercise its discretion to withdraw a proceeding when withdrawal would promote judicial economy and uniformity in the administration of bankruptcy and prevent forum shopping. See In re Orion Pictures Corp., 4 F.3d 1095, 1101 (2d Cir.1993), petition for cert. filed (U.S. Jan. 31, 1994) (No. 93-1231). The evidence in the dischargeability action was complex, voluminous and substantially overlapped with the MDL litigation. The district court had handled the MDL litigation for several years and was familiar with the facts and legal issues. In fact, Wolfswinkel had been a party in the MDL litigation for some time before his bankruptcy. Despite Wolfswinkel's protestation that he personally would have saved time and money with a bench trial before a bankruptcy judge, withdrawal resulted in time and expense economies for both the courts and the other litigants. In short, this is a perfect example of the kind of case that the district court could withdraw in the exercise of its discretionary power. See In re Sevko, Inc., 143 B.R. 114, 117 (N.D.Ill.1992); 1 Collier on Bankruptcy p 3.01[e] at 3-64 (Lawrence P. King ed., 15th ed. 1993). To have tried this one part of the massive MDL litigation separately before the bankruptcy judge would not only have been wasteful, it would have been downright silly. The district court did not abuse its discretion in withdrawing the dischargeability action.
 
 B. Separate Trial Motion
 
 12
 The district court refused to allow Wolfswinkel a separate trial. He claims that it abused its discretion in so refusing. However, our review makes it pellucid that the district court did not make "a clear error of judgment in its conclusion." Davis v. Mason County, 927 F.2d 1473, 1479 (9th Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 275, 116 L.Ed.2d 227 (1991). Wolfswinkel's absence from the MDL litigation due to his filing of a bankruptcy petition was not so extended that he became unable to defend himself at trial. Also, he could not avoid being linked with Charles Keating or escape evidence of the overall scheme in which he participated--a scheme designed to falsely inflate the apparent value of the Keating enterprises.
 
 
 13
 C. Motion for New Trial and for Judgment Notwithstanding the Verdict
 
 
 14
 It is not at all clear that Wolfswinkel truly seeks review of the district court's denial of judgment notwithstanding the verdict. If he does, he seeks in vain. He did not move for a directed verdict at the close of evidence at trial, nor has he briefed the issue, although he does mention it. Those defects are fatal to any JNOV claim. See Herrington v. Sonoma County, 834 F.2d 1488, 1500 (9th Cir.1987), amended, 857 F.2d 567 (1988), cert. denied, 489 U.S. 1090, 109 S.Ct. 1557, 103 L.Ed.2d 860 (1989); International Union of Bricklayers Local No. 20 v. Martin Jaska, Inc., 752 F.2d 1401, 1404 (9th Cir.1985).
 
 
 15
 Wolfswinkel's claim that he was entitled to a new trial fares no better. He asserts that the size of the jury's verdict demonstrates that it was biased and prejudiced. We are not convinced. Nothing in this case suggests that the jury was blinded or inflamed by some impropriety, or otherwise, when it decided that Wolfswinkel played a significant part in perpetrating the evil success of Keating's evil empire. That is no less true because the jury awarded excessive damages to express its outrage at what Wolfswinkel did. See Seymour v. Summa Vista Cinema, Inc., 809 F.2d 1385, 1387 (9th Cir.), amended, 817 F.2d 609 (1987).
 
 
 16
 His claim that the district court should have granted a new trial because the verdict was against the great weight of the evidence must also come to naught. There certainly was evidence to support the verdict, and the district court clearly recognized that it had the power to grant a new trial. It properly weighed the evidence and decided that the verdict was not against the great weight of that evidence. It committed no error. See Landes Constr. Co., Inc. v. Royal Bank of Canada, 833 F.2d 1365, 1371-72 (9th Cir.1987).
 
 D. Damages
 
 17
 Wolfswinkel asserts that the court should, somehow, have apportioned damages among all settling and non-settling defendants based upon their relative culpability, rather than, in effect, making him jointly and severally liable for the whole. However, he requested no jury instruction or form of verdict that would permit that kind of apportionment. His present jeremiad comes too late. See Hammer v. Gross, 932 F.2d 842, 847-48 (9th Cir.) (en banc), cert. denied, --- U.S. ----, 112 S.Ct. 582, 116 L.Ed.2d 607 (1991).
 
 
 18
 Moreover, Wolfswinkel's claim that he is not subject to RICO treble damages even though he was found to have been a RICO coconspirator is otiose. His citation to Reves v. Ernst & Young, --- U.S. ----, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), does not advance his cause. That case did not hold that someone who enters into a RICO conspiracy can avoid treble damages simply because he is not a part of management. It merely determined what was meant by operating or managing a RICO enterprise for the purpose of deciding whether there was any RICO liability at all. Id. at ----, 113 S.Ct. at 1169-73. Given Wolfswinkel's RICO liability, the district court's trebling of damages was clearly proper.
 
 
 19
 AFFIRMED.
 
 
 
 *
 Hon. Stephen V. Wilson, United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 There are numerous plaintiffs and consolidated cases in the underlying proceeding. For convenience, all are referred to as Shields in this opinion
 
 
 [2]
 On December 21, 1992, the district court itself decided the dischargeability issue. It entered findings of fact and conclusions of law which held that Shields' claim against Wolfswinkel was nondischargeable under 11 U.S.C. Sec. 523(a)(2)(A). Wolfswinkel has not appealed that order
 
 
 [3]
 Wolfswinkel also states that the district court should not have submitted the dischargeability action to the jury. At oral argument he conceded that there was no impropriety in submitting the issues of liability and damages to the jury. We, of course, accept that concession. As to the issue of dischargeability, the district court did decide that issue itself. See supra, n. 2