**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WATEC CO., LTD., a Japanese
corporation,
  *Plaintiff-counter-
  defendant-Appellee,*

  v.

CHIA C. LIU, a resident of
California esa Chia L. Liu; WATEC
COMPANY AMERICA, a Nevada
corporation esa Watec America
Corporation,
  *Defendants-counter-
  claimants-Appellants,*

GENWAC INC., a New York
Corporation,
  *Counter-defendant-
  Appellee.*

Nos. 03-55823
03-56079

D.C. No.
CV-00-10893-FMC

OPINION

Appeal from the United States District Court
for the Central District of California
Florence Marie Cooper, District Judge, Presiding

Argued and Submitted
November 1, 2004—Pasadena, California

Filed March 30, 2005

Before: Mary M. Schroeder, Chief Judge, Ronald M. Gould,
and Richard R. Clifton, Circuit Judges.

Opinion by Judge Gould

**COUNSEL**

R. Joseph Trojan, Esq. and Jessica J. Slusser, Esq., Trojan Law Offices, Beverly Hills, California, for the defendants-counterclaimants-appellants.

C. "Keila" Nakasaka, Law Offices of Nakasaka, Los Angeles, California, and Orlando F. Cabanday, Hennelly & Grossfeld LLP, Pacific Palisades, California, for the plaintiff-counterdefendant-appellee.

---

**OPINION**

GOULD, Circuit Judge:

We must resolve issues arising from this trademark dispute between the Japanese manufacturer Watec Company Limited ("Watec Japan") and its former distributor, Watec Company America ("Watec America"). Watec America and its president, Chia C. Liu, appeal the district court's denial of their motion for a new trial claiming that they are entitled to a new trial because the district court's denial of their mid-trial motion for judgment as a matter of law had the effect of an evidentiary ruling that barred them from presenting their defense to Watec Japan's trademark infringement claim. Watec America and Liu also challenge the sufficiency of the evidence supporting the jury's verdict that they breached an oral distribution agreement with Watec Japan and infringed on Watec Japan's trademarks. Additionally, Watec America and Liu argue that the excessiveness of the jury's original trademark infringement damages award demonstrates that the entire verdict was tainted by passion and prejudice. Finally, Watec America and Liu contend that the district court erred in determining that this was an "exceptional" case that warranted an award of attorneys' fees under the Lanham Act. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm the

district court's denial of Watec America and Liu's new trial motion, and affirm the jury verdict and the judgment with remittitur, but vacate and remand on the issue of attorneys' fees.

# I

Appellee Watec Japan is a Japanese corporation that has been in the business of manufacturing and selling compact security cameras since 1987. Watec Japan has always used the WATEC and WAT marks on its products. From 1988 to March 1999, Watec Japan used an international distributor, Nippon Engineering and Trading Company ("Netco"), to assist its sale of cameras bearing the WATEC and WAT marks in markets outside of Japan.

Through early 1990, Watec Japan and Netco sent out thousands of direct mail solicitations and sample cameras bearing WATEC and WAT marks to potential American customers. They also attended national trade shows where they displayed cameras bearing the WATEC and WAT marks. There was also evidence that American customers and potential customers placed orders and requested price quotes from Watec Japan before June 1990.

According to Watec Japan's president Shigemi Igarashi, Watec Japan decided to set up an American distributor in June 1990. Igarashi testified that Watec Japan entered into an oral agreement with Chia Liu at Netco's recommendation, whereby Liu would form and operate Watec America as Watec Japan's exclusive distributor in the United States. Watec Japan's distributor for Mexico and Latin America attested to the existence of this oral agreement.

Watec Japan gave initial capital funding and a credit line, and supplied cameras to Watec America and Liu. Fifty-one percent of the shares in Watec America was received by Watec Japan in exchange for its capital contribution. Igarashi

also told the jury that one of the terms of the agreement was that Watec America and Liu would receive a license to use the WATEC and WAT marks for the purpose of selling Watec Japan's cameras.

During the course of the parties' relationship, Watec America and Liu held themselves out as representatives of Watec Japan, and identified Watec Japan as the holder of the WATEC and WAT trademarks in marketing materials. Watec America registered the WATEC and WAT marks with the United States Patent and Trademark Office in 1992 and 1993 respectively, and the marks have since become "incontestable" under 15 U.S.C. § 1065.

In 1995, Liu entered a written agreement with Watec Japan to purchase all of Watec Japan's shares in Watec America. Liu drafted the Stock Purchase Agreement which neither mentioned the trademarks, nor purported to transfer anything other than shares in Watec America to Liu.

In 1998, Watec America and Liu began selling cameras made by manufacturers other than Watec Japan, but still sold them under the WATEC and WAT marks. Watec Japan responded by asserting that these sales of non-Watec Japan cameras violated the parties' exclusive distributorship and licensing agreements. Watec America and Liu refused to heed Watec Japan's request that they stop using the WATEC and WAT marks on non-Watec Japan products. Consequently, Watec Japan began to phase out sales of its cameras to Watec America, and formed another company named Genwac to act as its United States distributor. Finally Watec Japan stopped supplying cameras to Watec America and Liu in March 2000, and this litigation commenced when Watec Japan sued Watec America and Liu in October 2000, *inter alia*, for breach of contract and trademark infringement. Watec America and Liu responded with counterclaims, including one for trademark infringement.

Thus issue was joined in this commercial battle, and after discovery and other proceedings the case went to trial before a jury in February 2003. Pursuant to Federal Rule of Civil Procedure 50 ("Rule 50"), Watec America and Liu filed a motion for judgment as a matter of law ("JMOL") on Watec Japan's trademark infringement claim after the close of Watec Japan's case-in-chief. The district court reserved ruling on this JMOL motion, and Watec America and Liu began presenting their defense. Three days into Watec America and Liu's defense presentation, however, the district court granted their motion for JMOL on the trademark infringement claim, and ruled that the only claim remaining on Watec Japan's complaint was the claim for breach of contract. Watec Japan then made an argument for reinstatement of its trademark claim, which the court took under consideration, and Watec America and Liu continued with their defense. Once Watec America and Liu completed their defense case, they began presenting their case-in-chief on their trademark infringement counterclaim. Watec Japan was in the middle of rebutting Watec America and Liu's counterclaim when the district court excused the jury and informed the parties that the court was reversing its grant of the JMOL motion and would allow Watec Japan's trademark infringement claim to go to the jury. Watec Japan then requested and received a brief continuance to assess the impact of the decision on its trademark claim. Watec America and Liu made no such request and did not at that time assert prejudice to their case arising from the district court's reversal of its position on the JMOL motion.

Subsequently, in a conference held outside of the jury's presence, both sides summarized their remaining evidence for the district court so that the court could estimate the amount of time needed to conclude the trial. After the parties finished presenting their evidence to the jury, the district court asked each side if there was any additional evidence that they wanted to present to the jury. At this point, Watec America and Liu decided that they wanted to call one more witness, which the court permitted them to do. After this additional

witness concluded his testimony, the district court again asked Watec America and Liu if they had further evidence to offer. They responded "no"[1] and both sides rested.

The jury rejected Watec America and Liu's trademark claim against Watec Japan, and instead returned a $5.9 million verdict in favor of Watec Japan on its breach of contract and trademark infringement claims against Watec America and Liu. The jury also found that Watec America's infringement was intentional, and therefore that Watec Japan was entitled to attorneys' fees. The district court entered judgment based on the jury verdict.

After the verdict, Watec America and Liu filed motions for a new trial, renewed JMOL motions, and a motion to amend the judgment or for judgment notwithstanding the verdict. The district court denied the renewed JMOL motions, but ruled that Watec America and Liu would be entitled to a new trial on the ground that the $5 million trademark infringement damages award was excessive as a matter of law unless Watec Japan agreed to a remittitur of damages. Watec Japan accepted a remittitur reducing the $5 million trademark infringement award to $2,156,590, and the district court then entered an Amended Judgment reflecting the reduced award. The district court later entered a separate order awarding Watec Japan $289,612 in attorneys' fees pursuant to 15 U.S.C. § 1117(a). This timely appeal of the Amended Judgment followed.

## II

We first address Watec America and Liu's argument relating to the merits of the district court's denial of their first JMOL motion. Watec America and Liu waived their right to

---

[1]After Watec America and Liu's additional witness stepped down the district court asked if there was any further evidence in surrebuttal, and Watec America and Liu responded "No, Your Honor."

seek review of this denial by failing properly to argue it as a specific assignment of error in their opening brief. Fed. R. App. P. 28(a)(9)(A);**²** *Laboa v. Calderon*, 224 F.3d 972, 980 n.6 (9th Cir. 2000) ("[W]e will not ordinarily consider matters on appeal that are not specifically and distinctly argued in appellant's opening brief."). The only argument in Watec America and Liu's opening brief about the district court's decision to deny their first motion for JMOL concerns the effect of the decision, not its merits; Watec America and Liu challenge the district court's reversal of its prior grant of JMOL solely on the ground that this decision allegedly denied them the opportunity to present evidence on the claim that they initially believed they had won as a matter of law. Accordingly, we decline to reach the merits of the district court's first Rule 50 ruling.

## III

We now consider whether the district court erred in denying Watec America and Liu's motion for a new trial**³** that was based on their assertion that the district court's denial of their first JMOL motion had the effect of an evidentiary ruling that barred them from presenting their defense to Watec Japan's trademark infringement claim.**⁴**

Although Watec America and Liu press this argument about exclusion of evidence, the record does not permit us to

---

**²**Rule 28(a)(9)(A) states that an appellant's brief must contain: "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies."

**³**We review a district court's ruling on a motion for a new trial for abuse of discretion. *Janes v. Wal-Mart Stores Inc.*, 279 F.3d 883, 886 (9th Cir. 2002). Evidentiary rulings are similarly reviewed for abuse of discretion, and an exclusion of evidence should not be reversed absent prejudice. *Id.*

**⁴**Ruling from the bench the district court stated: "it seems to me there are too many questions for the jury to say [that Watec Japan cannot establish trademark infringement] as a matter of law . . . . So I think this has to go to a jury."

view the issues in the light they have presented. We are firmly of the view that in the circumstances of this case, Watec America and Liu cannot claim evidentiary error on appeal because they did not offer evidence that the district court excluded. More generally, it would be odd to think that a party could claim evidentiary error on appeal if the district court faced no tender of evidence that required an evidentiary ruling.

In *Callan v. Great Northern Railway Co.*, 299 F.2d 908, 911 (9th Cir. 1961), we saw "no merit in appellant's contention that the trial court erroneously refused to" admit certain evidence where the appellant "voluntarily abandoned his offer of proof" despite the trial judge's clear indication that "he had not yet made his mind up on the question of the admissibility of" the evidence.

To similar effect is our decision in *Swinton v. Potomac Corp.*, 270 F.3d 794, 809 (9th Cir. 2001), where we rejected a challenge to a district court's alleged "exclusion" of evidence, because the record demonstrated that the evidence "was never excluded by the court." Instead, the record in that case showed that the appellant's counsel voluntarily abandoned all attempts to admit the evidence in the face of objections by opposing counsel even though the district court expressly reserved ruling on the objections and told appellant's counsel to "[g]o ahead" and to "continue with th[e] witness." *Id.*

[1] As in *Callan* and *Swinton*, Watec America and Liu here cannot challenge the district court's reversal of its grant of their first JMOL motion as if it were a ruling excluding their evidence on trademark infringement. To the contrary the district court repeatedly invited Watec America and Liu to alert the court if they wanted to present more evidence to rebut Watec Japan's trademark infringement claim. Watec America and Liu took advantage of these invitations to present evidence, and then informed the trial court that they had no fur-

ther evidence to present. Watec America and Liu "cannot now complain of the exclusion of evidence when the district court never actually excluded it." *Id.*

**[2]** The district court's reversal of its position on the JMOL did nothing more than to reinstate Watec Japan's trademark infringement claim, after which both sides had the same burdens of proof as at the trial's start.

## IV

We next address Watec America and Liu's challenge to the sufficiency of the evidence supporting the jury's determinations and special verdict that an oral distributorship agreement existed between the parties and that Liu was personally liable on the contract.[5]

On the issue whether an oral agreement to distribute cameras existed, the trial boiled down to a contest of credibility between Watec Japan's witnesses and Liu, and the jury's verdict represents a finding of fact that cannot be altered by an appellate court if sufficient evidence was presented on Watec Japan's victorious side. Such a situation is not uncommon in contract disputes, and similar cases can be found in the precedents.[6] The sole question before us on the existence of an oral contract is whether Watec Japan's evidence was sufficient to sustain the jury's verdict, that is, whether reasonable minds

---

[5]A jury's verdict must be upheld if supported by substantial evidence. *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). Substantial evidence is relevant evidence reasonable minds might accept as adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion. *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000). We will not "weigh the evidence or assess the credibility of witnesses in determining whether substantial evidence exists." *Landes Constr. Co., Inc. v. Royal Bank of Can.*, 833 F.2d 1365, 1371 (9th Cir. 1987).

[6]*See, e.g.*, *Landes Constr. Co.*, 833 F.2d at 1371 ("As this was a suit on an oral contract, the trial consisted of little more than a swearing contest.").

might accept the evidence as adequate for the jury's conclusion.

The jury was instructed that to find a contract it needed to determine that there was evidence of (1) legal capacity to contract; (2) mutual consent; (3) a lawful objective; and (4) sufficient consideration. We now consider the sufficiency of evidence in light of the applicable law as outlined in the jury instructions on contract law.[7]

With respect to the existence of the distributorship contract, Watec Japan offered testimony of party witnesses confirming both the formation of an oral agreement and its material terms. Igarashi, president of Watec Japan, testified that he entered into a distributorship agreement with Liu, and outlined the agreement's "key terms." Igarashi also testified as to conduct of the parties consistent with the existence of such an agreement; he testified that Watec Japan provided Watec America and Liu with initial capital funding and a line of credit, in addition to supplying them with cameras. Watec Japan's distributor for Mexico and Latin America at the trial told the jury that he had repeatedly heard from Watec Japan that Watec America and Liu had the same type of exclusive distributorship as he did, except that their territory covered the United States and Canada.

This testimony was corroborated by non-party witnesses who attested that they had interacted with Watec America in its capacity as a distributor for Watec Japan. For example, a former customer of Watec America, testified that "it was [his] understanding that [Watec America was] the official distributor" for Watec Japan in the United States, based on Watec America's representations. Another Watec America customer testified that it was his understanding that Watec America was

---

[7]Watec America and Liu did not object to the pertinent instructions on applicable contract law and we have no occasion here to review any issue other than sufficiency of the evidence on the contract issues as instructed.

the sole distributor for Watec Japan in the United States, and that Watec America's sales representative had led him to believe that this was the case. Watec Japan also introduced in evidence for the jury Watec America's business cards, advertisements, product brochures, and trade show banners, all of which identified it "as a Division of Watec Co. Ltd." and Watec Japan as the holder of the WATEC and WAT trademarks. With respect to Liu's personal liability on the distributorship contract, Watec Japan offered Igarashi's testimony that he had contracted with Liu personally.

**[3]** We hold that there is substantial evidence to support the jury's findings that an oral agreement existed between the parties and that Liu entered into the agreement in his personal capacity. The existence of some contradictory evidence in the record does not alter our conclusion. *Roy v. Volkswagen of Am., Inc.*, 896 F.2d 1174, 1179 (9th Cir. 1990) (affirming jury verdict despite "weighty evidence" to the contrary because there was also evidence supporting the jury's verdict and "[i]t is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses"); *Landes Constr. Co.*, 833 F.2d at 1371 (affirming jury verdict even though the record could arguably support different inferences because the jury's inference was a "reasonable" one). We affirm the jury's verdict on breach of contract.

## V

**[4]** Watec America and Liu also challenge the jury's verdict on trademark infringement, arguing that they are not liable to Watec Japan for infringement because Watec Japan did not make the requisite showing to overcome Watec America's incontestable federal trademark rights to the WATEC and WAT marks. Under 15 U.S.C. § 1065, a federally registered trademark that is used continuously for five years becomes "incontestable," entitling the holder to an exclusive right to use the mark that can only be defeated on specifically enu-

merated grounds. *Casual Corner Assocs., Inc. v. Casual Stores of Nev., Inc.*, 493 F.2d 709, 711-12 (9th Cir. 1974). One of the statutory exceptions to "incontestability" is set forth in the introductory clause of § 1065, which provides that a registration is not incontestable to the extent that it infringes on another's valid rights in the mark acquired under state law by a use continuing from a date prior to the federal registration of the mark. 15 U.S.C. § 1065;[8] *Casual Corner*, 493 F.2d at 711.

In *Casual Corner* we held that a litigant claiming § 1065 senior rights in a mark must show: (1) that his or her "use of the mark began before its registration and publication"; and (2) "that there has been continuing use since that time." 493 F.2d at 712. Watec America and Liu challenge the jury's finding that they infringed on Watec Japan's senior rights in the WATEC and WAT marks on the grounds that there was insufficient evidence of prior and continuing use.[9]

**A**

Watec America and Liu urge us to overturn the jury's trademark verdict on the basis that there was insufficient evidence of market penetration in any state to support the jury's

---

[8]The precise language of this 15 U.S.C. § 1065 exception reads as follows:

> [E]xcept to the extent, if any, to which the use of a mark registered on the principal register infringes a valid right acquired under the law of any State or Territory by use of a mark or trade name continuing from a date prior to the date of registration under this chapter of such registered mark, the right of the registrant to use such registered mark in commerce for the goods or services on or in connection with which such registered mark has been in continuous use for five consecutive years subsequent to the date of such registration and is still in use in commerce, shall be incontestable . . . .

[9]We review the jury's senior rights determination for substantial evidence. *See Pavao*, 307 F.3d at 918.

finding that Watec Japan acquired nationwide rights in the WATEC and WAT marks under state common law[10] before they were registered by Watec America. The jury was instructed that:

> A party claiming common law senior rights must demonstrate that it has sufficient market penetration in a specific locality or localities. Market penetration must consider such factors as the total dollar value of sales, the proportion or percentage of the common-law claimants' sales of trademarked products in relation to the market place in the locality in question. The actual doing of business rather than the mere use of a flyer or advertisement is required [f]or the establishment of common-law rights in any locality.

> Even if Watec Japan were to show common-law senior rights, any such senior rights constitute an exception to incontestability only in the proven market locale. Therefore, you must determine, if common-law senior rights are found, what market locale or locales, if any, Watec Japan has proven it penetrated prior to the date of registration.

We now consider the sufficiency of the evidence in light of the applicable law as outlined in these jury instructions.[11] The dispositive question is whether reasonable minds might accept

---

[10]It is undisputed that the only state law rights Watec Japan can assert in the marks are those arising under state common law; Watec Japan cannot assert state statutory rights in the marks because it never registered the marks in any state.

[11]We express no opinion on whether the jury was properly instructed on the legal standard for establishing common law senior rights under the "prior use" element of the *Casual Corner* test. Because Watec America and Liu did not object to the district court's senior rights instruction, we have no occasion here to review any issue other than the sufficiency of the evidence on this trademark claim element as instructed.

the evidence as adequate for the jury's conclusion. *Three Boys Music Corp.*, 212 F.3d at 482.

Watec Japan presented many examples of direct mail advertisements and brochures that it sent to potential customers across the United States in 1989, before Watec America was formed, along with testimony from Watec Japan's president Igarashi that thousands of such letters were sent out at that time. There was also testimony from Igarashi that Watec Japan attended national trade shows where it displayed sample cameras bearing the disputed marks, and that Watec Japan sent a few thousand sample cameras bearing the marks to potential customers nationwide.

**[5]** Watec Japan further submitted in evidence pre-1992 letters from customers in Florida, New York, and Pennsylvania, placing orders, requesting price quotes, and mentioning sample cameras that they had received or had seen at trade shows, as well as prior purchases that they had made. Finally, the president and owner of a company that resells Watec cameras to local, state, and federal law enforcement agencies throughout the United States testified that he began purchasing cameras bearing the WATEC and WAT marks before June 1990. Viewing this record in the light most favorable to Watec Japan which won the favor of the jury's verdict, we hold that there is substantial evidence from which a jury could have found that Watec Japan had acquired nationwide senior common law rights in the WATEC and WAT marks by marketing cameras bearing the marks on a national scale, before Watec America registered the marks in 1992 and 1993.

**B**

**[6]** A person claiming senior rights in a trademark must establish not only that he or she used the mark before the mark was registered, but also that such use has continued to the present. *Casual Corner Assoc.*, 493 F.2d at 712. Watec Japan argues that it can establish continuous use during the

time between Watec America's formation and Genwac's formation based on Watec America and Liu's use because Watec America and Liu were using the marks as Watec Japan's licensees during that time period.

In cases involving a manufacturer and distributor in an exclusive distributorship arrangement, courts typically look first to any agreement between the parties regarding trademark rights. *Sengoku Works Ltd. v. RMC Int'l, Ltd.*, 96 F.3d 1217, 1220 (9th Cir. 1996). Here, Watec Japan contended and the jury found that Watec Japan licensed Watec America and Liu to use the WATEC and WAT marks, and that Watec Japan did not transfer any rights in the marks to Liu when it sold its shares of Watec America in 1995. Substantial evidence supports the jury's findings.

**[7]** Igarashi testified that Watec Japan orally granted Watec America a license to use the WATEC and WAT marks in its capacity as Watec Japan's exclusive distributor. Watec Japan also offered various of Watec America and Liu's own advertisements stating that "WATEC, and WAT, are registered trademarks for Watec Co., Ltd. (Tokyo, Japan)," and that "Watec is a registered trademark of Watec Company, Limited (Tokyo, Japan)," in support of its argument that Watec America and Liu were merely holding the United States trademark registrations on behalf of Watec Japan. There is substantial evidence to support the jury finding that the parties entered into a licensing agreement.

**[8]** There is also substantial evidence that Watec Japan did not relinquish its rights in the disputed marks when it sold all its shares in Watec America to Liu. Igarashi testified that the terms of the parties' original distributorship agreement were to remain unchanged even following the sale. The Stock Purchase Agreement drafted by Liu is consistent with this testimony because it neither mentions the trademarks, nor purports to transfer anything other than shares in Watec America to Liu. We affirm the jury's finding that the stock

sale did not affect the parties' licensing arrangement, and affirm the jury's verdict on trademark infringement.

## VI

We turn to Watec America and Liu's arguments seeking a new trial because of the jury's assertedly excessive damage awards for trademark infringement and breach of contract.

## A

**[9]** Watec America and Liu argue that the Supreme Court's decision in *Minneapolis, St. Paul & Sault Ste. Marie Ry. Co. v. Moquin*, 283 U.S. 520 (1931), mandates a new trial because the jury's excessive trademark infringement damages award demonstrates that the jury was acting under the influence of passion and prejudice. It is well established that "no verdict can be permitted to stand which is found to be in any degree the result of appeals to passion and prejudice." *Id.* at 521; *see also Pershing Park Villas Homeowners Ass'n v. United Pac. Ins. Co.*, 219 F.3d 895, 905 (9th Cir. 2000) ("A new trial is necessary where it is found that passion and prejudice tainted the jury's verdict.").

**[10]** But it is equally clear that a new trial is not required even where there is an excessive damages award resulting from passion and prejudice, unless there is also evidence "that passion and prejudice affected the liability finding." *Pershing Park Villas*, 219 F.3d at 905. "Where there is no evidence that passion and prejudice affected the liability finding, remittitur is an appropriate method of reducing an excessive verdict," although the district court still retains the option of vacating the judgment and ordering a new trial. *Seymour v. Summa Vista Cinema, Inc.,* 809 F.2d 1385, 1387 (9th Cir. 1987).

In *Seymour*, we declined to order a new trial, notwithstanding the district court's acknowledgment that the jury's damages award "far exceeded the amount proved at trial" and

might "have resulted from passion and prejudice," because the district court did not find, and the record did not show, that there was any impermissible conduct at trial which might have tainted the rest of the verdict. *Id.* We explained that while the defendant was relying "entirely on the excessive jury award to prove passion and prejudice," the mere "fact that a jury may have been outraged by the defendant's conduct to the point of awarding excessive damages does not prove that its decision on liability was flawed." *Id.*

**[11]** The present case is strikingly similar to *Seymour*. In ordering a remittitur, the district court recognized that the jury's original $5 million trademark infringement damages award was "not supported by, and in fact completely ignores and rejects, the evidence," since the figure calculated by the damage experts was only $2,156,590. However, the district court pointed out that a possible "explanation for the jury's $5 million award is that it awarded the entire gross sales figure to plaintiff."[12] We find this explanation persuasive. There is no evidence indicating that there was impermissible conduct by Watec Japan or any other unusual circumstance that might have caused the jury's findings of contract and trademark infringement liability to become infected with passion and prejudice. The district court's use of remittitur was appropriate.

## B

Watec America and Liu also attack the jury's breach of contract damages award on the ground that the jury considered an overly long time period in making its determination; Watec America and Liu argue that the jury based its award on the testimony of Watec Japan's expert who made his calculations on an allegedly improper timeframe that extended beyond the date the distribution agreement was terminated.

---

[12]Watec Japan's damage expert testified that the gross revenue Watec America generated from infringing sales was approximately $5.2 million.

However, we rejected a similar argument in *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 95 F.3d 1422, 1435 (9th Cir. 1996), which was an inverse condemnation action where the jury awarded damages to compensate the plaintiffs for the delay the defendant-city caused in the plaintiffs' efforts to develop their property. The defendant in *Del Monte Dunes* attacked the jury's damages award as excessive and alleged that the jury was permitted to consider an overly long time period in calculating the amount. In despite of the defendant's arguments, we upheld the jury award because the district court had left the issue of the relevant length of time to the jury, and the defendant had "no factual basis upon which to argue what length of the time the jury found relevant" in making its determination. *Id.*

Here, as in *Del Monte Dunes*, Watec America and Liu have no factual basis for arguing about the length of time the jury actually used in assessing contract damages. Although Watec Japan's expert testified as to the time period he used in calculating Watec Japan's lost profits, Watec America and Liu were free to counter his estimation of the relevant time period with their own evidence, and the district court left the ultimate decision on the relevant time period for damages to the jury. There was substantial evidence supporting the jury's contract damages award.

## VII

**[12]** Finally we turn to the issue of whether the district court erred in awarding Watec Japan $300,000 in attorneys' fees under the Lanham Act. Watec America and Liu attack the fee award on the ground that this does not qualify as an "exceptional" case within the ambit of 15 U.S.C. § 1117(a).[13]

---

[13]While a determination that a case is "exceptional" under the Lanham Act is a question of law subject to de novo review, where a trademark case is exceptional, we review a district court's decision to award attorneys' fees for abuse of discretion. *Earthquake Sound Corp. v. Bumper Indus.*, 352 F.3d 1210, 1216 (9th Cir. 2003).

15 U.S.C. § 1117(a) provides in pertinent part that: "The court in exceptional [trademark] cases may award reasonable attorney fees to the prevailing party." A trademark case is exceptional where the district court finds that the defendant acted maliciously, fraudulently, deliberately, or willfully. *Earthquake Sound*, 352 F.3d at 1216.

**[13]** "Generally, a district court's order on attorney's fees may be set aside if the court fails to state reasons for its decision . . . ." *Mattel Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 815 (9th Cir. 2003). Here the district court explained that it had awarded fees to Watec Japan because "[t]he jury expressly found that defendant, Watec America, intentionally infringed on plaintiff's trademarks, and recommended an award of fees." This approach to awarding fees is problematic because a determination that a trademark case is exceptional is a question of law for the district court, not the jury, and because the jury's finding that Watec America "intentionally infringed" does not necessarily equate with the malicious, fraudulent, deliberate or willful conduct that we usually require before deeming a case exceptional. *See Earthquake Sound Corp.*, 352 F.3d at 1216-17.

**[14]** Although we can affirm a fee award notwithstanding the district court's failure to explain the reasons for its award if the record supports the district court's decision, *id.*, we conclude that the issue of the appropriateness of fees in this case is best addressed under the proper legal standard by the district court in the first instance. Accordingly, we vacate and remand this issue to the district court to permit it to determine whether this is a sufficiently "exceptional" trademark case to warrant the award of attorneys' fees under 15 U.S.C. § 1117(a), and, if so, to make express findings explaining why.

## VIII

We hold that the district court properly denied Watec America and Liu's motion for a new trial because Watec

America and Liu were not deprived of the opportunity to present their trademark infringement defense. The district court also committed no error in remitting the jury's excessive trademark damages award instead of granting a new trial because there was no evidence that the jury's finding of liability was tainted by passion and prejudice. However, because the district court did not make the requisite finding that this case is "exceptional" within the meaning of 15 U.S.C. § 1117(a), we vacate its award of attorneys' fees and we remand this issue to the district court for its further assessment consistent with this opinion.

We also hold that the jury's verdict on breach of contract and trademark infringement must stand because it is supported by substantial evidence. Likewise, the jury's contract damages award must stand because Watec America and Liu lack a factual basis for challenging the time frame that the jury used in its calculations.

**AFFIRMED IN PART; VACATED IN PART and REMANDED**.