**Reinhold FLUCK and Cheryl Fluck, husband and wife; and Metro Direct Information Services of Phoenix, Inc., an Arizona corporation, Plaintiffs,**

v.

**Louise BLEVINS; Patrick M. Cox; Kevin Anderson; G.B. Conley; Steve Posey; Tim Timmons; Metro One Direct Information Services, Inc., an Oregon corporation; Carl Peterson; Estate of James Tallman; and Tia Tallman–Brown, in her capacity as personal representative of the Estate of James Tallman, Defendants.**

**Civil No. 95–391–AS.**

United States District Court,
D. Oregon.

April 18, 1997.

John F. McGrory, Davis Wright Tremaine, Portland, OR, James E. Bartels, Meyer & Wyse, Portland, OR, Robert C. Van Voorhees, Neil Vincent Wake, Bryan Cave McPheeters & McRoberts, Phoenix, AZ, Steven Roger Herman, Phoenix, AZ, for plaintiffs.

Mark A. Turner, Ater Wynne Hewitt Dodson & Skerritt, Portland, OR, Tom Galbraith, Jeff Allen Shumway, Lewis & Roca, Phoenix, AZ, for defendants Patrick M. Cox, Kevin Anderson, Steve Posey, Tim Timmons.

Morton A. Winkel, Portland, OR, for defendant G.B. Conley.

Harding B. Cure, Timothy F. Bolden, O'Connor Cavanagh Anderson Westover Killingsworth & Beshears, Phoenix, AZ, David B. Wiles, Portland, OR, for defendants Estate of James Tallman, Tia Tallman-Brown.

## OPINION

ASHMANSKAS, United States Magistrate Judge.

This is a complex action that includes claims for *inter alia,* violation of securities laws, breach of contract, and RICO. The instant motion (# 207) concerns a settlement between plaintiffs and some of the defendants. A condition of the settlement is that the court enter a "bar order" to protect the settling defendants against contribution claims by non-settling defendants. I previously granted such an order for one group of defendants, though it was a much smaller settlement on that occasion (only about $40,-000.). The Tallman defendants, who opposed that bar order, also oppose this bar order. So does defendant Conley. Since Conley joins in Tallman's objections, I will refer to them jointly as the Tallman defendants. The objections focus upon the fairness of the settlement to the non-settling defendants, the valuation of that settlement and the effect this settlement will have upon the liability of the non-settling defendants.

### I

Whenever there is joint responsibility for tortious conduct, the question often arises whether those who compensate the injured party may seek contribution from other joint tortfeasors who have paid no damages or paid less than their fair share. *Musick, Peeler & Garrett v. Employers Ins. of Wausau,* 508 U.S. 286, 288, 113 S.Ct. 2085, 2086, 124 L.Ed.2d 194 (1993). In *Musick,* the Court sided with those Circuits that had found such a right to contribution in a 10b–5 action. *Id.* at 297, 113 S.Ct. at 2091.

The joint and several liability rule helps to ensure that the injured person can collect the full amount of damages awarded. The right to contribution, in turn, helps to ameliorate

the harshness, from the defendants' perspective, of joint and several liability. While promoting equity, the right to contribution can also create obstacles to the settlement of complex litigation. A settling defendant has no assurances that the non-settling defendants won't later seek contribution for any judgment entered in the case. That possibility robs the settlement of its finality and exposes the settling defendant to additional liability. In addition, the settling defendant may be held liable for paying a judgment rendered in a case to which that defendant is no longer even a party. Anyone foolish enough to settle under those conditions "is courting disaster." *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir.1989). *See also Laventhol Krekstein, Horwath & Horwath v. Horwitch*, 637 F.2d 672 (9th Cir. 1980) (defendants who had settled with plaintiff and helped plaintiff to prosecute claims against remaining defendants nonetheless was liable for contribution to non-settling defendants.)

For that reason, the federal courts have fashioned an equitable doctrine known as a "bar order." If the court determines that the settlement is not unduly prejudicial to the non-settling parties, the court will enter an order barring any claims against the settling defendants for contribution. The principal concern is the extent and manner in which the compensation paid by the settling defendants is credited against any liability that ultimately may be assessed against the non-settling defendants.

The complexity and the importance of this question is evidenced by the many law review articles on the topic, each advocating a different approach.[1] The courts have similarly been divided over the proper rule to apply in such circumstances.

The two methods most frequently discussed are *"pro tanto"* and "proportionate liability". In a *pro tanto* regime, the amount paid by the settling defendants is deducted from the overall verdict, and the non-settling defendants are liable for the balance. By contrast, in a proportionate liability system, the jury determines the amount of total damages and the percentage of culpability for each defendant. The percentage attributable to the settling defendants is then subtracted, and the non-settling defendants are jointly and severally liable for the balance of the damages.

Each of the two leading methods has its advantages and disadvantages. The *pro tanto* method can be the simplest to implement, or the most complex, depending upon the facts of the particular case. If there are two defendants, and one settles for $50,000, then it is an easy matter to subtract that sum from the final verdict; the remaining defendant is liable for the balance. Problems arise, though, if it is not a cash settlement, for then the court must establish a value for the consideration received. That may not be an easy task, especially if some of the consideration is intangible or even speculative.

---

**1.** *See, e.g.,* Liberti, *Joint and Several Liability Under Rule 10b–5: The Apportionment of Liability for Contribution Claims Involving Non–Settling Defendants,* 7 DePaul Bus L J 45 (1994); Steinberg, *Contribution and Proportionate Liability Under the Federal Securities Laws in Multidefendant Securities Litigation After the Private Securities Litigation Reform Act of 1995,* 50 SMU L Rev 337 (1996); Hickman, *Rethinking the Proportional Reduction Rule in the Settlement of Multiparty Securities Actions,* 32 Santa Clara L Rev 649 (1992); Silver, *Contribution Under the Securities Acts: The Pro Rata Method Revisited,* 1992/1993 Ann Surv Am L 273 (1994); Hansen, *The Effect of Partial Settlements on the Rights of Non–Settling Defendants in Federal Securities Class Actions: In Search of a Standardized Uniform Contribution Bar Rule,* 60 UMKC L Rev 91 (1991); Note, *Striving Towards a Superior Settlement Credit Rule in Federal Securities Actions,* 13 Rev Litig 623 (1994).

Some commentators question whether the federal courts even have the power to issue bar orders in securities cases. Comment, *Courts Lack the Power to Issue Contribution Bar Orders in Securities 10b–5 Cases,* 89 Northwestern U L Rev 1117 (1995). Other commentators contend that the federal courts may not fashion federal common law in this instance, but must borrow the applicable state law. Hickman, *Rethinking the Proportional Reduction Rule,* 32 Santa Clara L Rev at 674–697. *See also Agency Holding Corp. v. Malley–Duff & Assoc., Inc.,* 483 U.S. 143, 157–64, 107 S.Ct. 2759, 2767–68, 97 L.Ed.2d 121 (1987) (Scalia, J., dissenting from majority's decision not to borrow most analogous state statute of limitations where Congress did not provide for one). I will not address such arguments here, since they were not asserted by the parties.

For instance, as part of a settlement the parties may withdraw counterclaims, and release all claims against each other including some that have not yet been filed or may as yet be unknown or unmatured. The value of such a release may be inconsequential or it may be quite substantial. In a case such as the one *sub judice,* where various business transactions and investments are intermingled with securities claims, a settlement might conceivably include a relinquishment of certain rights or interests, a quitclaim deed, a non-compete agreement, a confidentiality clause, or any number of similar provisions. Somehow the trial court must establish a value for that settlement, which may require a mini-trial in itself.[2]

To further complicate matters, the trial court may have to determine how much of the settlement should be allocated against compensatory damages, punitive damages, treble damages, or attorney fees. If there are multiple defendants, not all of whom are named in each claim, the trial court may also need to decide what portions of the settlement to allocate against each claim or injury. If some of the settlement proceeds are compensation for the release of claims that are not part of the instant case, the court must further apportion that settlement.

Another problem with *the pro tanto* method is that it encourages collusion. A plaintiff can settle rather cheaply with some of the defendants, in return for their assistance in prosecuting the plaintiffs' case against the remaining defendants, *i.e.,* those with deeper pockets, or in return for an interim "war chest" to finance the litigation against the deep pocket defendants. The plaintiffs total recovery will not be diminished by the discounted settlement, since only the sums actually received as part of the settlement will be deducted from the verdict. The *pro tanto* method may also over-compensate a plaintiff by ignoring the "discount" factor inherent in any settlement. Although the plaintiff was willing to settle his $100,000 claim for $50,000 to avoid going to trial, he can receive his $50,000—and thus be assured of some recovery—yet also pursue the remaining defendants for the balance. In addition, the non-settling defendants shoulder the risk that the plaintiff settled too cheaply.

The only way to protect the rights of the non-settling defendants under a pure *pro tanto* regime is for the court to conduct a "fairness hearing." The court must determine whether the settling defendants are paying a fair portion of the total obligation. This in turn requires the court to estimate the total amount of damages and attorney fees that are likely to be awarded, the likelihood that the plaintiff will prevail against each defendant, and each defendant's ability to pay a judgment. Of course, such a hearing is not feasible until discovery has been complete, and may require a mini-trial on the merits, in order to decide whether to approve a settlement that is designed to avoid a trial on the merits. The waste of judicial resources is manifest. *See United States Fidelity & Guaranty Co. v. Patriot's Point Development Authority,* 772 F.Supp. 1565 (D.S.C.1991) (discussing this problem); *Alvarado Partners, LP v. Mehta,* 723 F.Supp. 540 (D.Colo.1989) (same.)

The proportionate liability method resolves some of these problems, but creates others. One criticism is that it allows the plaintiff to reap a windfall. For instance, a plaintiff can settle with defendant A for $100,000, and then go to trial against defendant B and have the jury decide that the total amount of damages was really only $50,000, for which B is partly liable. Although the plaintiff has already recovered from A twice the total amount of damages he suffered, he can then recover B's proportionate share of the $50,000 as well. That conflicts with the longstanding rule that a plaintiff may obtain only one satisfaction for an injury.

A second criticism is that the jury must now apportion liability amongst the defendants, which percentages may vary between claims. In making such apportionment the jury must consider the fault of those defendants who already have settled. The economies of settlement may be substantially di-

---

**2.** In the process, the details of the settlement may be publicized, thereby defeating any confidentiality clause in the settlement agreement.

minished when the court is obliged to try claims and issues regarding person who no longer are parties to the case. In addition, conflicts may arise between the various defendants, who now have an incentive to blame each other instead of mounting a joint defense. Indeed, since it is in the plaintiff's interests to minimize the culpability of the defendants who settled before trial, the plaintiff may be obliged to undertake the defense of those absent defendants. The danger of collusion between the plaintiff and settling defendants is present here as well.

The proportionate liability method may also discourage partial settlements in some circumstances, because it may effectively limit joint and several liability. The plaintiff in a securities action will often join one or more defendants who have deep pockets but limited culpability, e.g., an accounting or law firm in an action where the other defendants are primarily at fault but have limited assets. If the plaintiff settles with the other defendants for a modest sum, and the jury then finds the deep pocket defendant is only 5% at fault, under a proportionate liability system the plaintiff can recover only 5% of the verdict. By contrast, if the *pro tanto* method was utilized, the plaintiff could recover the full amount of the verdict less only the modest sums paid by the settling defendants. For that reason, plaintiffs typically prefer the *pro tanto* method, and defendants tend to prefer the proportionate liability method, though there are exceptions depending upon the unique facts of each case.

A further consideration is that when the proportionate liability rule is utilized, the non-settling defendants are jointly and severally liable for the percentage of fault attributed to the non-settling defendants *as a whole*, not just the percentage of fault attributed to each individual defendant. *See Kaypro*, 884 F.2d at 1231. Consequently, if there are some defendants with a high degree of culpability but little assets, and a deep pocket defendant with comparatively little fault, the plaintiff has a strong incentive to keep the more culpable defendants in the case so their percentage of fault will then be attributed to the deep pocket defendants. This can have the effect of discouraging partial settlements. It also can be used as a tactic to coerce a settlement from a deep pocket defendant.

Critics of the proportionate liability method also contend that it gives the plaintiff incentive to place all of the blame upon the non-settling defendants, in order to maximize their percentage of culpability. There is some merit to that concern. However, the defendant now has the benefit of the "empty chair defense." He can admit there was some wrongdoing, but blame the settling defendants. The argument cuts both ways.

One advantage of the proportionate liability method is consistency. Although the rule may vary between the circuits, the Ninth Circuit has selected proportionate liability as the method for assessing contribution in securities cases. *Smith v. Mulvaney*, 827 F.2d 558, 561 (9th Cir.1987). If proportionate liability is the method that governs contribution between the defendants, then logically it should also be the method employed for crediting a partial settlement by some of the defendants.

However, there is one important distinction. For purposes of contribution, liability ordinarily is apportioned only among the solvent defendants. *Kahn v. Weldin*, 60 Or. App. 365, 374, 653 P.2d 1268 (Or.App.1982). In securities cases, however, the proportionate liability rule has been applied so that the non-settling defendants are jointly and severally liable for the percentage of fault attributed to the non-settling defendants as a whole, which may include insolvent defendants. *See Kaypro*, 884 F.2d at 1231. Consequently, if—to cite one example—there are only two solvent defendants, each of whom is found to be 5% at fault, and the plaintiff chooses to settle with only one of the two solvent defendants (and none of the insolvent defendants), the second solvent defendant is liable to pay 95% of the judgment, and is barred from seeking contribution from the other solvent defendant. By contrast, in the absence of a bar order, each of the two solvent defendants in that scenario would have been liable to pay 50% of the judgment. In such a scenario the consistency afforded by the proportionate liability method is illusory.

Still another level of complexity is added by the prospect that claims for contribution may subsequently be asserted against *non-*defendants, *i.e.,* persons who allegedly were at fault but were not named in the lawsuit. *See Employers Ins. of Wausau v. Musick, Peeler & Garrett,* 954 F.2d 575 (9th Cir.1992) (allowing contribution claim against non-party, even though district court had already found that the settlement was fairly apportioned, on grounds that whether a person has paid his fair share of the liability may vary depending upon how the universe of tortfeasors is defined, and "fair share" for one purpose may not be "fair share" for another purpose in the same case.)

To summarize, there are serious problems with both the *pro tanto* and the proportionate liability methods of crediting partial settlements.

## II

In *Kaypro,* the Ninth Circuit endorsed the proportionate liability method for crediting partial settlements. *Kaypro,* 884 F.2d at 1231–32. At first glance, that would seem to end the debate. However, in two other decisions—one prior to *Kaypro* and one issued just last year—the Ninth Circuit applied the *pro tanto* method. *Cf Seymour v. Summa Vista Cinema Inc.,* 809 F.2d 1385, 1389 (9th Cir.1987) (applying one satisfaction rule and affirming trial court's decision to offset value of settlement against verdict); *DCD Programs, Ltd. v. Leighton,* 90 F.3d 1442 (9th Cir.1996).

In *DCD,* which was issued several months after I recommended approval of the first bar order, the plaintiffs settled with some of the defendants for $1,360,000. The district court then dismissed the claims against the remaining defendants on grounds that pursuant to the settlement agreement plaintiffs had already recovered more than the total damages which they had suffered. They were not entitled to more than one satisfaction. The Ninth Circuit affirmed.

*DCD* does not directly mention contribution and bar orders, per se. Nor does it acknowledge the existence of, let alone distinguish, the *Kaypro* rule. *DCD* is just an application of the time-honored rule that a plaintiff may not obtain more than one satisfaction for the same injury. Nonetheless, *DCD* conflicts with *Kaypro* because it uses the *pro tanto* method to offset the value of the settlement against any remaining liability by the non-settling defendants. Had the Circuit applied the proportionate liability method of crediting a partial settlement, the plaintiff in *DCD* would have been entitled to proceed against the remaining defendants, and could have recovered the full amount of any verdict reduced only be the percentage of fault attributed to the settling defendants.

*DCD* relied upon a statute, 15 U.S.C. § 78bb(a), which provides, in relevant part, that "no person permitted to maintain a suit for damages under the provisions of this chapter shall recover, through satisfaction of judgment in one or more actions, a total amount in excess of his actual damages on account of the act complained of". The chapter in question is the Securities Exchange Act of 1934, which is the foundation for most securities actions. Consequently, it appears that § 78bb(a) is applicable to at least some of the claims in this case. At oral argument, it was suggested that § 78bb(a) does not apply to all of plaintiffs' claims, since plaintiffs are also asserting claims under the 1933 Securities Act, RICO, and breach of contract. Thus we could have a situation in which different rules for crediting a partial settlement are applicable to different claims.

Even assuming § 78bb(a) itself isn't applicable, the legal principle may still be, since it is derived from the common law. *Cf Seymour v. Summa Vista Cinema, Inc.,* 809 F.2d 1385, 1389 (9th Cir.1987) (applying one satisfaction rule and affirming trial court's decision to offset value of settlement against verdict). However, that brings us full circle to the conflicting panel decisions in *Seymour, Kaypro,* and *DCD.*

 When two Ninth Circuit panel decisions conflict, the trial court ordinarily follows the older case. That is because one Ninth Circuit panel cannot overrule another; only an *en banc* court can overrule the prior panel decision, at least in the absence of a change in controlling authority. *See United States v. Hardesty,* 977 F.2d 1347 (9th Cir.

1992)(en banc); *Palmer v. Sanderson,* 9 F.3d 1433, 1437 n. 5 (9th Cir.1993); *In re Catli,* 999 F.2d 1405, 1408 n. 5 (9th Cir.1993); *Nichols v. McCormick,* 929 F.2d 507, 510 n. 5 (9th Cir.1991).

Here, it is unclear which is the older case. *Kaypro* predates *DCD,* but *Kaypro* is itself predated by *Seymour. Kaypro* did not even mention *Seymour,* let alone distinguish it. The bottom line is that there is a trio of inconsistent Ninth Circuit decisions, none of which even acknowledges the others.

The United States Supreme Court has never addressed this issue in the context of a securities case. In *McDermott, Inc. v. Am-Clyde,* 511 U.S. 202, 114 S.Ct. 1461, 128 L.Ed.2d 148 (1994), the Court addressed a similar issue in an admiralty context. The Court chose to adopt proportionate liability instead of the *pro tanto* rule, after a lengthy analysis of both methods. While this is not an admiralty case, the Court's analysis ordinarily would be given considerable weight. However, a paramount factor in *McDermott* was "consistency with the proportionate fault approach" that the Court has applied to admiralty law as a whole. *Id.* at 209–13, 217–19, 114 S.Ct. at 1466–67, 1470. There is no comparable history in securities law. In addition, the source of the right to contribution in securities cases is quite different from that in admiralty cases. *Musick,* 508 U.S. at 290, 113 S.Ct. at 2087–88.[3] Consequently, the choice of the proportionate liability method in *McDermott* does not necessarily mean that the Court would adopt that method for crediting a partial settlement in a securities case.

As if the foregoing were not complex enough, Congress recently enacted the Private Securities Litigation Reform Act of 1995 ("The Act"), which became law on Dec. 22, 1995. Section 201 provides for entry of bar orders in securities actions. Congress attempted to redress the weaknesses of the *pro tanto* and proportionate liability approaches by combining them. In a case governed by Sec. 201, the plaintiffs' recovery against non-settling defendants is reduced by the *greater* of the sum paid by the settling defendants or the proportionate amount of the verdict that corresponds to the liability attributed by the jury to the settling defendants.

For instance, if the settling defendants paid $100,000, and the jury verdict was for $50,000, then the non-settling defendants would have no liability. ($50,000 less $100,-000). Alternatively, if the jury verdict was for $500,000, and the settling defendants were found to be 40% liable, then the non-settling defendants would be liable for $300,-000 ($500,000 less 40%). This approach would seem to resolve the conflict that presently exists between *Kaypro* and *DCD.*

Unfortunately, this compromise also retains some of the principal deficiencies of each method. For instance, the court must still decide how to value a non-cash settlement for purposes of applying this rule, and how to apportion those sums against different claims and the different forms of damages. The jury must also allocate a percentage of fault to each defendant, and perhaps for each group of claims as well. Of course, there may be circumstances where the result is so obvious that precise computation is not necessary, e.g., where the amount of the verdict, reduced by the settling defendants' proportion of liability, is clearly less than the sums already paid by the settling defendants.

The parties agree that the 1995 Act is not retroactive. Nonetheless, since the *Kaypro* rule is a creation of federal common law, the *Kaypro* rule conflicts with the rule followed by some other circuits and even other Ninth Circuit cases, and Congress has created a new rule which resolves that conflict, there is some logic to applying the new rule here. *See Musick,* 508 U.S. 286, 113 S.Ct. 2085, 124 L.Ed.2d 194 (emphasizing the statutory origins of the contribution rule, and the importance of discerning the intent of Congress in implementing the securities laws.)

3. The Court has placed great emphasis upon defining the source of the right to contribution. *Compare Musick,* 508 U.S. 286, 113 S.Ct. 2085, 124 L.Ed.2d 194 (finding right to contribution in 10(b)(5) cases), with *Texas Industries Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981)(no right to contribution in antitrust action) and *Northwest Airlines, Inc. v. Transport Workers Union,* 451 U.S. 77, 101 S.Ct. 1571, 67 L.Ed.2d 750 (1981) (no right to contribution for claims under Title VII or the Equal Pay Act.)

My inclination is to follow section 201 of the 1995 Act for purposes of crediting any settlements reached in this action. However, because that option was not addressed in the parties' briefs, I will give the non-settling parties an opportunity to brief this issue further before making a final determination.[4]

### III

The Tallman defendants have opposed the motion for approval of the settlement and entry of the bar order. They argue that:

1. The *Kaypro* rule is inapposite to these facts.

2. Plaintiffs have already recovered from the settling defendants more than they claimed to have been damaged, yet under the *Kaypro* rule plaintiffs will now be allowed to seek further recovery from the Tallman defendants.

3. The monetary value of the settlement has been deliberately understated so the non-settling defendants will have additional liability even after plaintiffs have recovered more than the amount of their alleged damages.

4. The settlement is improperly being "allocated" to satisfy certain claims, thus leaving the non-settling defendants with exposure on other claims.

5. Since, as part of the settlement, plaintiffs will receive the stock in question, the burden of proof is being shifted to the non-settling defendants to prove what the stock is worth instead of the plaintiffs having to offer such proof as part of their prima facie case for damages.

6. Plaintiffs, by accepting the stock as part of the settlement, must be deemed to have made an election of remedies that bars certain other remedies.

7. Before entering a bar order, the court must make a finding that the settlement is fair to the non-settling defendants and entered into in good faith. Otherwise, the non-settling defendants will be denied their right to contribution which they otherwise would have against the other defendants who allegedly were jointly and severally liable.

8. Having already recovered the full amount of their actual losses, by virtue of the partial settlements, plaintiffs may not now proceed against the remaining defendants solely to recover treble damages, punitive damages, or attorney fees.

The threshold question is whether this is the proper time to address those concerns. The settling defendants contend there is no good reason for this court to delay approval of the settlement and entry of a bar order. How the partial settlement ultimately is credited against the liability of the non-settling defendants is of no interest to the settling defendants.

■ Ordinarily it is best to decide such questions before approving the settlement and entering the bar order. *In re Jiffy Lube Securities Litigation,* 927 F.2d 155, 161–61 (4th Cir.1991). Otherwise, it is difficult for the court to determine whether the settlement is fair to the non-settling defendants. Moreover, the method for crediting a settlement and how it is valued and apportioned may materially affect the plaintiff's decision whether to proceed with that settlement. *Id.*

However, at oral argument plaintiffs requested that I proceed with approval of the settlement and entry of the bar order despite these unresolved questions. Plaintiffs are willing to assume the risk that my decision on those matters will be unfavorable to plaintiffs. That leaves only the non-settling defendants who oppose approval of the settlement and entry of the bar order.

Movants contend that the non-settling defendants cannot possibly be prejudiced by a low settlement because the non-settling defendants will be liable only for their proportionate liability. That assumes, of course, that proportionate liability will be a feature of any method that I select for crediting the settlement; it would not be true if I were to

---

4. Application of the 1995 Act to this case would not create an ex post facto problem. Although a bar order was previously issued in this case with regard to the Peterson defendants, my decision here does not alter the effect of that bar order; they are out of the case and not liable for contribution.

apply a pure *pro tanto* rule, albeit that prospect is very remote.

At oral argument, it was also suggested that defendant Conley cannot be prejudiced by any settlement because if the jury finds him only 5% liable then that is all he must pay. However, under a proportionate liability system each non-settling defendant is jointly and severally liable for the percentage of fault attributed to all of the non-settling defendants as a whole, not just his own fault. *Kaypro*, 884 F.2d at 1231. Consequently, if a jury were to find the Tallman defendants 65% liable, and defendant Conley 5% liable, Conley would be jointly and severally liable for 70% of the verdict, not 5%.[5] Whether Conley could recover some of that amount from his fellow non-settling defendants would depend upon their solvency. He would be barred from seeking contribution against the settling defendants. A similar problem confronts the Tallman defendants.

Consequently, assuming that I apply some sort of proportionate liability method for crediting the partial settlement—either pure proportionate liability or the hybrid method employed in section 201 of the 1995 Act—the critical issue would appear to be the ability of the non-settling defendants to pay any judgment against them, or to pay any cross-claims for contribution.

■ The Tallman defendants cite *Kaypro* for the proposition that the district court must hold a "fairness hearing." However, *Kaypro* was a class action, and thus the court had to review any settlement to ensure it was fair to the members of the class. The instant case is not a class action, hence this court's approval is not required before consummating a settlement. The only reason why the court is even involved in this settlement is because the settling parties have invoked the court's equitable powers by requesting entry of a bar order. The sole question presented is whether entry of the bar order would be fair to the non-settling parties.

In a *pro tanto* system, that determination requires a "fairness hearing" to ensure the settling parties are paying their fair share of

any liability. For the most part, that is not an issue in a proportionate liability system, because the non-settling defendant will be liable only for his or her proportionate share of the judgment. It is the plaintiff who assumes the risk that the settlement is too low. In a proportionate liability system, the only time when the non-settling plaintiffs could be prejudiced by entry of a bar order is if (a) some of the non-settling plaintiffs are unable to pay any judgment that might be rendered against them, or (b) for some other reason (e.g., a defendant with some form of immunity) a non-settling defendant is exempt from contribution to the other non-settling defendants, and (c) one or more of the settling defendants has contributed less than his or her fair share of the judgment in relation to the remaining defendants. In that situation, some of the non-settling defendants may ultimately be required to pay a larger percentage of the judgment than is indicated by the percentage of fault attributed to them by the jury. Ordinarily a defendant who paid more than his share could seek contribution from the settling defendant. The bar order would deny that right.

■ Consequently, it may be necessary for me to hold a fairness hearing, but its scope will be narrow. The threshold question will be whether the non-settling defendants are each capable of paying any judgment that may be rendered against them, and would be subject to contribution to their fellow non-settling defendants. An affirmative answer terminates the inquiry. Otherwise, I must then consider whether the settling defendants are paying their fair share of the total liability, as apportioned among those defendants who are both solvent and subject to claims for contribution.

The other objections asserted by the Tallman defendants are not really objections to the bar order per se. Rather, they concern the valuation of the settlement, or its effect upon the remainder of this case. Those issues can be addressed separately at a later date.

---

5. The numbers are used merely to illustrate the point. I express no opinion as to whether any of

the defendants will be found liable, or what their relative culpability might be.

## CONCLUSION

Private rights of action have been described as "a judicial oak which has grown from little more than a legislative acorn." *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 737, 95 S.Ct. 1917, 1926, 44 L.Ed.2d 539 (1975). Unfortunately, as many backyard gardeners have learned to their dismay, a tree planted without sufficient forethought can quickly develop into a major headache. Until Congress or the Supreme Court articulate a coherent vision for shaping this tree, the dozen circuit courts and hundreds of district courts will continue to independently tinker with it, and the results will continue to be inconsistent and unsatisfactory.

I tentatively conclude that the methodology described in Sec. 201 of the Private Securities Reform Act of 1995 should be utilized in determining how to credit the partial settlements against the liability of the remaining defendants. Since this possibility was not discussed in the briefs, I will give the parties 10 days from the date of this opinion (calculated per FRCP 6) to file a memorandum articulating any objections to that proposal. The parties also have 10 days to file any objections or other comments regarding the proposed scope of the fairness hearing, and to advise the court whether there are any questions concerning the solvency of the non-settling defendants or their accountability for any contribution that may be assessed in favor of another non-settling co-defendant. Absent such concerns there is no need for the court to conduct a fairness hearing. Finally, the parties may comment on whether any bar order should be reciprocal, *i.e.,* whether it should also prohibit claims for contribution brought by the *settling* defendants against the remaining defendants.