*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

No. 19-AA-334

LEMMA HOLDINGS, LLC T/A BLISS, PETITIONER,

v.

DISTRICT OF COLUMBIA ALCOHOLIC BEVERAGE CONTROL BOARD, RESPONDENT.

On Petition for Review of an Order of the
District of Columbia Alcoholic Beverage Control Board
(18-251-67)


(Submitted May 26, 2020                    Decided August 20, 2020)

*Jeanett P. Henry* for petitioner.

*Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General, *Carl J. Schifferle*, Acting Deputy Solicitor General, and *Richard S. Love*, Senior Assistant Attorney General, for respondent.

Before FISHER, MCLEESE, and DEAHL, *Associate Judges*.

MCLEESE, *Associate Judge*: Petitioner Lemma Holdings, LLC t/a Bliss, which operates a nightclub, challenges an order of the District of Columbia Alcoholic Beverage Control Board determining that Bliss committed alcohol-licensing violations. We affirm.

**I.**

After an evidentiary hearing, the Board fined Bliss $8,000, concluding that Bliss had committed two violations: allowing its premises to be used for unlawful or disorderly conduct, in violation of D.C. Code § 25-823(a)(2) (2012 Repl. & 2020 Supp.); and failing to follow its security plan, in violation of D.C. Code § 25-823(a)(6). In sum, the evidence at the hearing was as follows.

Early one morning in January 2018, an intoxicated woman was lying on the floor of Bliss's bathroom. A group of female patrons nearby became upset that they could not use the bathroom, and they began yelling and arguing with staff members. The patrons were not acting violently at that point. One of the female patrons stumbled and fell to the floor after being pushed by someone who the Board inferred was a male security-staff member. Another female patron grabbed at the male security guard's sweatshirt; in response, he shoved her to the ground. At this point, other female patrons and a second security guard entered the scuffle. A third female patron tried to punch the first security guard, but he ducked and pushed her down. Some, but not all, of the scuffle was captured by security cameras.

Bliss's general manager did not fully prepare a detailed incident report as required by Bliss's security plan. Specifically, the report that was prepared did not name the employees involved in the incident and did not identify any notified police official. The report also did not mention the woman who had been lying on the bathroom floor. The patrons involved filed a police report.

Bliss's security plan indicates that the entirety of the nightclub is covered by security cameras. The security plan also generally prohibits security employees from responding to emergencies by using force, except to prevent assault.

Bliss's general manager testified that the men shown in the camera footage assaulting the female patrons were not Bliss employees.

The Board did not credit the testimony that the men who assaulted the female patrons were not Bliss employees. The Board explained that Bliss did not provide any video evidence showing that it had ejected the men from the nightclub for their actions, which suggested that the men had a relationship with Bliss. The Board further noted that there was no evidence the female patrons had been violent or threatening before being pushed by security.

Based on these factual findings, the Board concluded that a Bliss employee had unlawfully assaulted a patron, that Bliss's management was complicit in the assault, and that the unlawful use of force violated Bliss's security plan. On the question of Bliss's complicity in the assault, the Board explained that Bliss had failed to follow security procedures and reporting requirements with respect to the assault, and either had failed to ensure that security cameras covered the entire nightclub or had withheld video footage of the assault. The Board characterized the conduct of Bliss's management as "amount[ing] to willful blindness and the hiding of security issues within the establishment." The Board concluded that Bliss's method of operating was "conducive to additional violence" and "demonstrated an unwillingness on the part of management to properly superintend the facility."

Finally, relying on its earlier decision in *Kabin Group, LLC.*, No. 17-251-134 (Apr. 25, 2018), the Board concluded that a violation of § 25-823(a)(2) did not require proof of a continuous course of conduct by Bliss.

## II.

Our review of agency decisions is generally limited in scope. *Panutat, LLC v. District of Columbia Alcoholic Beverage Control Bd.*, 75 A.3d 269, 272 (D.C.

2013). "[W]e must affirm unless we conclude that the agency's ruling was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* (internal quotation marks omitted). "When there is substantial evidence in the record to support the Board's decision, we will not substitute our judgment for that of the Board, even though there may also be substantial evidence to support a contrary decision." *Id.* (internal quotation marks omitted). We have said that we give "great deference" to "an agency's interpretation of [a] . . . statute which [the agency] administers." *Id.* (internal quotation marks omitted). Bliss acknowledges that we should accord "considerable deference" to the Board's interpretation of § 25-823. We have no occasion to look behind that acknowledgment. *See generally United States v. Mead Corp.*, 533 U.S. 218, 228 (2001) ("The fair measure of deference to an agency administering its own statute has been understood to vary with circumstances . . . .").

## A. Assault and Violation of the Security Plan

Bliss argues that the evidence did not support the Board's finding that one of its employees unlawfully assaulted a female patron. We think it obvious, however, that the evidence described above was more than sufficient to support the Board's finding of an unlawful assault. To the extent that Bliss rests its argument on the

contents of the video footage, we note that the video footage was not provided to this court for its review. *Cf. Cooper v. District of Columbia Dep't of Emp't Servs.*, 588 A.2d 1172, 1174 (D.C. 1991) (because hearing transcripts and exhibits were not before court of appeals, "petitioner has failed to carry his burden of demonstrating that the agency's factual findings are not supported by substantial evidence in the record").

Given the conclusion that a Bliss employee unlawfully assaulted a patron, the Board reasonably found a violation of the security plan's requirement that Bliss employees responding to an emergency "only physically intercede to prevent or stop a violent individual from physically assaulting another person."

### B. Allowing Unlawful or Disorderly Use

To violate § 25-823(a)(2), a licensee must have "allow[ed] the licensed establishment to be used for any unlawful or disorderly purpose." D.C. Code § 25-823(a)(2). Bliss argues that the Board impermissibly concluded that Bliss had allowed the nightclub to be used for an unlawful or disorderly purpose. We uphold the Board's conclusion.

Section 25-823(a)(2) is not violated simply because an unlawful assault occurs at a licensee's establishment. Section 25-823(b) does provide that "[a] single incident of assault . . . shall be sufficient to prove a violation of [§ 25-823(a)(2)]." Section 25-823(b) goes on to clarify, however, that a single incident of assault will suffice only if "the licensee has engaged in a method of operation that is conducive to unlawful or disorderly conduct." D.C. Code § 25-823(b).

In the present case, the Board concluded that Bliss had engaged in such a method of operation, and in fact was complicit in the assault. In support of those conclusions, the Board relied on the failure of Bliss's management to follow security procedures and reporting requirements with respect to the assault. The Board also explained that Bliss's management either had failed to ensure that security cameras covered the entire nightclub or had withheld video footage of the assault. As previously noted, the Board characterized the conduct of Bliss's management as "amount[ing] to willful blindness and the hiding of security issues within the establishment." The Board further concluded that Bliss's method of operating was "conducive to additional violence" and "demonstrated an unwillingness on the part of management to properly superintend the facility." In our view, those conclusions are supported by substantial evidence.

We also view those conclusions as a reasonable basis for viewing Bliss as sufficiently complicit in the assault by its employee as to support a finding that Bliss violated § 25-823(a)(2). *Cf., e.g.*, *Seymour v. Summa Vista Cinema, Inc.*, 809 F.2d 1385, 1388 (9th Cir. 1987) (jury could find that principal ratified agent's conduct "through knowledge and failure to act"); *Bowoto v. Chevron Texaco Corp.*, 312 F. Supp. 2d 1229, 1247 (N.D. Cal. 2004) ("Covering up the misdeeds of an agent can also constitute ratification."). We are not persuaded by Bliss's arguments to the contrary.

### 1. Continuous Course of Conduct

Bliss argues that a violation of § 25-823(a)(2) based on the actions of a private actor or non-managerial employee requires proof of a "continuous course of conduct, continued over time." We hold that the Board reasonably determined that a violation of § 25-823(a)(2) does not require proof of a continuous course of conduct by the licensee.

We turn first to the language of § 25-823. *In re Settles*, 218 A.3d 235, 238 (D.C. 2019) ("The first step in construing a statute is to read the language of the statute and construe its words according to their ordinary sense and plain meaning.")

(internal quotation marks omitted). Section 25-823(a)(2) does not explicitly require a continuous course of conduct. To the contrary, the text of § 25-823(b) points in the opposite direction, stating that a single incident of assault can suffice. Section 25-823(b) does require that the licensee have "engaged in a method of operation that is conducive to unlawful or disorderly conduct," but the Board could reasonably conclude that the latter requirement does not mean that the licensee's method of operation must have been "continuous" and "continued over time." In fact, our cases interpreting § 25-823 have explicitly distinguished between continuous courses of conduct and methods of operation. *See, e.g.*, *1900 M Rest. Ass'ns, Inc. v. District of Columbia Alcoholic Beverage Control Bd.*, 56 A.3d 486, 493-94 (D.C. 2012) ("*Rumors*") ("In the absence of evidence of a continuous course of conduct, it may be sufficient that the licensee's method of operation created an environment that fostered or was conducive to the unlawful or disorderly conduct that inevitably took place.").

Bliss argues, however, that this court's cases have interpreted the language of § 25-823(a)(2) (which was previously codified as § 25-823(2) (2012 Repl.)) to require a continuous course of conduct. To the contrary, our cases construing that language made clear that the existence of a continuous course of conduct by the licensee is relevant but not required. *Rumors*, 56 A.3d at 493-94 (Although the

existence of a continuous course of conduct is "the relevant inquiry," "[i]n the absence of evidence of a continuous course of conduct, it may be sufficient that the licensee's method of operation created an environment that fostered or was conducive to the unlawful or disorderly conduct that inevitably took place."); *Levelle, Inc. v. District of Columbia Alcoholic Beverage Control Bd.*, 924 A.2d 1030, 1036 (D.C. 2007) ("[A]n unlawful or disorderly purpose under D.C. Code § 25-823 can be imputed to a licensee who engages in a method of operation that is conducive to unlawful or disorderly conduct.") (internal quotation marks omitted).

It is true that the court ruled in *Rumors*, 56 A.3d at 495-96, that proof of a continuous course of conduct was needed to establish a violation of the provision that is now codified at § 25-823(a)(6) (licensee's failure to follow security plan). That ruling, however, was legislatively overruled in 2015. *1215 CT, LLC v. District of Columbia Alcoholic Beverage Control Bd.*, 213 A.3d 605, 609-12 (D.C. 2019).

In sum, we hold that the Board reasonably concluded that a violation of § 25-823(a)(2) does not require proof of a continuous course of conduct by the licensee.

## 2.  Other Issues

Bliss raises a number of other objections to the Board's conclusion that Bliss violated § 25-823(a)(2).  We see no basis for relief.

First, Bliss argues that the Board incorrectly stated that the assault by itself sufficed to establish a method of operation within the meaning of § 25-823(a)(2). We need not (and do not) express a view on that statement, however, because the Board's finding of a violation in this case rested also on the additional circumstances that we have already discussed.

Second, Bliss suggests that the Board's determination of a violation in this case is inconsistent with this court's decision in *Rumors*, 56 A.3d at 492-95.  We disagree.  *Rumors* was interpreting § 25-823 before the 2015 addition of § 23-823(b), which explicitly states that a single incident of assault can suffice if the licensee "engaged in a method of operation that is conducive to unlawful or disorderly conduct."  Even assuming, however, that the result in *Rumors* would be unaffected by the addition of § 25-823(b), *Rumors* is distinguishable.  *Rumors* involved what the court described as two isolated incidents of assault by employees. 56 A.3d at 494.  The court's decision to set aside the finding of a violation rested on

a conclusion that there was no evidence "that petitioner's method of operation created an environment that fostered or was conducive to the endangerment of Rumors' employees and patrons or to the initiation of violence by employees against patrons." *Id.* at 495. For the reasons we have explained, the Board reasonably concluded that there was such evidence in the present case.

Third, Bliss appears to suggest that some of the circumstances relied upon by the Board -- such as Bliss's failure to respond appropriately after the assault -- could not have caused the assault. That suggestion raises a potentially interesting issue of statutory interpretation. Section 25-823(b) requires that the licensee have "engaged in a method of operation that is conducive to unlawful or disorderly conduct," but it does not expressly state that the licensee's method of operation must have caused or contributed to the assault at issue. We need not decide whether such a connection is required. Although it is not clear to us from the decision in this case whether the Board viewed such a connection to be essential, the Board explicitly concluded "that Bliss's method of operation caused and contributed to the assault" in this case. In our view, the record in this case reasonably supports that conclusion. Specifically, the Board could reasonably infer that Bliss's general methods of operation -- including failures to properly monitor and record events in the nightclub and to

follow security and reporting requirements -- contributed to the assault, by fostering an environment in which employees felt free of proper supervision.

Fourth, Bliss argues that the Board had no reasonable basis for its expressed suspicion that Bliss might have withheld video footage of the incident. We disagree. Although Bliss's security plan indicated that security cameras had full coverage of the nightclub, Bliss did not provide footage directly depicting either the initial shove or a number of other aspects of the incident that occurred in areas that ought to have been monitored by camera. Given those circumstances, the Board had reasonable grounds for raising the possibility that footage might have been withheld.

Finally, Bliss argues that the Board should not have faulted it for failing to include in its incident report the names of the patrons involved in the incident, because the patrons did not give their names. Bliss's argument on this point rests on the testimony of Bliss's general manager, whose testimony the Board reasonably did not credit. In any event, the Board principally faulted Bliss for its undisputed failure to include in its report the names of the employees involved in the incident and any police officer to whom the incident was reported.

For the foregoing reasons, the order of the Board is

*Affirmed.*